George WASHINGTON, Appellant,

v.

WORLD PUBLISHING COMPANY, Appellee.

No. 44715.

Supreme Court of Oklahoma.

Dec. 26, 1972.

As Amended Feb. 14, 1973.

As Amended on Denial of Rehearing Feb. 20, 1973.

**914**

George Washington, Jr., Tulsa, for appellant.

Boone, Ellison & Smith, Tulsa, for appellee.

BERRY, Chief Justice:

This case is before us on appellee's, World Publishing Company, petition for certiorari from the Court of Appeals, Division No. 1. The appellate court reversed a grant of summary judgment in favor of World Publishing Company and remanded for trial.

The issue here is whether, under 12 O. S.1971, Ch. 2., App., Rule No. 13, World Publishing Company, defendant below, was entitled, as a matter of law, to summary judgment granted by the trial court. Rule No. 13, provides, in pertinent part:

"A party may move for judgment in his favor where the deposition, admission, answers to interrogatories and affidavits on file show that there is no substantial controversy as to any material fact. The adverse party may file affidavits or other materials in opposition to the motion. The affidavits which are filed by either party shall be made on personal knowledge, shall show that the affiant is competent to testify as to the matters stated therein and shall set forth facts that would be admissible in evidence. The court shall render judgment if it appears that there is no substantial controversy as to any material fact and that any party is entitled to judgment as a matter of law. * * *"

The parties will be referred to. as Washington or plaintiff and World or defendant. This is a libel action. Washington, the then American Party candidate for United States Senator became involved in a controversy with Clarence Thomas, the Tulsa County Chairman of the party. Prior to publication of the complained of libelous statement Chuck Ervin, a reporter for Tulsa World, assigned to news coverage of the Tulsa County, Oklahoma, Courthouse and the 1968 political campaigns discovered, in a routine examination of new litigation filed, that Washington had initiated a breach of contract action against Thomas. Ervin's subsequent inquiry included telephone interviews with both Washington and Thomas and with Reuel Little, state chairman for the American Party. The following day defendant, under Ervin's by-line, published a story concerning the controversy within the American Party. The foregoing facts are all contained in Ervin's affidavit filed in support of defendant's motion for summary judgment. They are uncontroverted by reply, affidavit of plaintiff or otherwise in the record. The following was a part of the published article:

"Thomas accused Washington of soliciting funds for former Alabama Governor George Wallace without authorization, then using the money for Washington's senatorial campaign, Wallace is the American Party candidate for President."

Based upon the above accusation, which plaintiff claims was false, this libel action was filed. In plaintiff's affidavit filed in response to defendant's affidavit plaintiff does not deny that Thomas made the above accusation. He denied only that he was advised by Ervin, the defendant's reporter, of the specific accusation. It is significant that Ervin's article, Exhibit "A" to the original petition, in referring to his contact with Reuel Little, the party's state chairman, contained the following:

"Little said he did talk to Washington about Thomas' charge that the senatorial candidate is using Wallace funds in his own campaign. 'However, nothing has been done,' Little said."

Plaintiff did not deny having a conversation with Little about Thomas' specific accusation. This obviously occurred prior to publication of the article. In his amended petition he alleges the reporter only asked him for his general comment on internal problems of the American Party. In response to this plaintiff claims, as reflected in Ervin's article, he said, "I'd rather not comment."

Defendant, asserting the qualified privilege for publication of libelous statements about either "public officials" or "public figures" enunciated in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412, and Curtis Publishing Company v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, filed its motion for summary judgment under Rule 13 supported by Ervin's affidavit and the deposition of plaintiff.

Our consideration is upon the assumption that the complained of published accusation was libelous per se. On this [the trial court assumed for purposes of argument only that it was libelous per se] there seems to be no disagreement at any point in the proceedings.

It is not plead in plaintiff's amended petition that he was or was not a "public figure" as that term is defined in Curtis Publishing Company v. Butts, supra. But the admission by Washington that he was, at the time of publication of the news article in question, in fact, such a figure seems tacitly implied from the language in the first sentence in the last paragraph of the amended petition just preceding the prayer which reads:

"That defendant published said article with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

The quoted language beginning with the words "actual malice" are the exact words used by Mr. Justice Harlan in Curtis, supra, when he stated at p. 133 of 388 U.S., at p. 1980, of 87 S.Ct., at p. 1098 and 1099 of 18 L.Ed.2d:

"In New York Times Co. v. Sullivan, 376 U.S. 254, 279–280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 [706, 95 A.L.R.2d 1412,] this Court held that '[t]he constitutional guarantees [of freedom of speech and press] require . . . a federal rule that prohibits a public official from recovering damages for defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"— that is, *with knowledge* that it was false or *with reckless disregard* of whether it was false or not.' We brought these two cases here, 385 U.S. 811, 87 S.Ct. 30, 17 L.Ed.2d 52, 385 U.S. 812, 86 S.Ct. 40, 17 L.Ed.2d 52, to consider the impact of that decision on libel actions instituted by persons who are not public officials, but who are 'public figures' and involved in issues in which the public has a justified and important interest. \* \* \*" [emphasis added]

The Curtis opinion held that both Wally Butts, the then athletic director of the University of Georgia, and retired General Walker, who had been in command of federal troops in 1957 during school segregation confrontations at Little Rock, Arkansas, were "public figures." As such the court held that publications concerning them were entitled to the qualified privilege announced in New York Times Co. v.

Sullivan, cited in Curtis, which applied the "actual malice" test. Further, George Washington's own testimony, in his deposition filed in the trial court in response to World Publishing Company's motion for summary judgment, reveals he had been active in the organization and formation in Oklahoma of the American Party which was, at the time, attempting seriously to field candidates for national and state offices in Oklahoma.

■ Plaintiff's deposition shows the following: he had permitted the use of his law office as the unofficial Tulsa County headquarters of the American Party; he had permitted the use of his office address and telephone number in a newspaper ad soliciting funds for the American Party's presidential candidate, George Wallace; plaintiff was the party's nominee for United States Senator from Oklahoma. In our opinion the trial court did not err, in finding for the purposes of motion for summary judgment, that Washington was a "public figure." Moreover, the public posture of the American Party both then and now on issues of great public interest could hardly be said to be non-controversial. That being true, and though there were no volatile or potentially volatile and imminent confrontations involved here as was the situation on the University of Mississippi campus when General Walker appeared there, nonetheless, it might be said here as was argued in the Walker case that Washington had thrust himself into the "vortex" of controversy and his protection under the libel laws was, therefore, limited.

Assuming the article was libelous per se and false, and Washington was a "public figure", did there remain for the determination of a jury a substantial controversy as to any material fact? If so, that court's sustaining Tulsa World Publishing Company's motion for summary judgment was improper.

The trial court had before it the deposition of George Washington, the affidavit of Chuck Ervin, the Tulsa World reporter who submitted the story which included the accusation the contents of which were allegedly false, the complete news article and the affidavit of Washington denying part of Ervin's affidavit. The determinative question is, was there a substantial controversy as to any material fact under the "actual malice" test as defined by the Supreme Court of the United States? We find the record lacking in this regard. The *only* act or omission to act, urged by plaintiff, that bears on the question of "actual malice" under New York Times, cited in Curtis, supra, or the "highly unreasonable conduct constituting an extreme departure" from reporting standards test in Curtis, is the alleged failure of the reporter to advise plaintiff, prior to publication, of the specific accusation complained of. Ervin's claim that he did so advise plaintiff is the *only* statement in his sworn affidavit that is denied by plaintiff in his affidavit in response. The court in Curtis Publishing Company v. Butts, supra, set out most clearly the kind of proof required for a "public figure" to recover damages for a defamatory falsehood when it said at 388 U.S. p. 155, at 87 S.Ct. p. 1991, at 18 L. Ed.2d, p. 1111:

> " * * * We consider and would hold that a 'public figure' who is not a public official may also recover damages for a defamatory falsehood whose substance makes substantial danger to reputation apparent, on a showing of *highly unreasonable conduct constituting an extreme departure* from the standards of investigation and reporting ordinarily adhered to by responsible publishers. Cf. Sulzberger, Responsibility and Freedom, in Nelson, Freedom of the Press from Hamilton to the Warren Court 409, 412." [Emphasis added]

Nowhere in the record before us are there any acts which, in turn, would support a conclusion of "actual malice" either alleged or mentioned by affidavit or deposition.

We first consider the amended petition. After alleging that plaintiff " . . . was not told about the specific accusation

which had been made by Thomas, but *was only asked by the reporter for a general comment on the internal problems of the American Party.*", [emphasis added] and "Defendant before publishing said libelous matter failed to exercise *reasonable* diligence to ascertain the truth of the facts so published" [emphasis added] and with *no other* allegations of any additional acts or omissions plaintiff pleads the conclusion of "actual malice" in the exact language of Curtis Publishing Company v. Butts, supra. As heretofore stated, plaintiff does not deny the accusation having been made by Thomas to the reporter, or dissension and problems within the American Party and among its members in Oklahoma and specifically in Tulsa County. Nor is there an allegation in the petition of any personal animosity between plaintiff and Ervin or of any circumstances from which it could even be inferred that Ervin was motivated toward public ridicule or vilification of plaintiff.

■ This Court has held in an action for damages for conspiracy the petition must allege facts showing the conspiracy, a mere charge of conspiracy being insufficient, Pearl v. Oklahoma City et al., 193 Okl. 597, 145 P.2d 400; allegations based largely, if not completely, on legal conclusions without a concise statement of the facts are insufficient and demurrable, Hoover et al. v. Board of Commrs. of Garvin County, 157 Okl. 255, 13 P.2d 207; Bates v. Old Mac Coal Co., Okl., 271 P.2d 315. In Weston v. Acme Tool, Inc., Okl., 441 P.2d 959, we held:

"In pleading fraud the acts constituting the fraud or circumstances from which a conclusion of fraud must be drawn, must be stated with particularity. A mere allegation of fraud without detailing the facts upon which the charge of fraud is predicated is a mere conclusion. * * * " citing Application of Irby [Irby v. City of Wilson], 205 Okl. 50, 234 P.2d 398, Finley v. Riley, 91 Okl. 58, 215 P. 950.

■ We have very carefully considered the deposition of plaintiff and find no statements or answers made by him which outline acts or omissions from which we can conclude "actual malice." Plaintiff did not refute the article's statement that he did talk with Reuel Little about Thomas' accusation. Regardless, and even assuming the reporter did not inform him of the accusation prior to publication, such an omission on his part, when weighed in the total context of Washington's deposition, was not *"highly unreasonable conduct* constituting an *extreme departure* from the standards of investigation and reporting ordinarily adhered to by responsible publishers." [emphasis added] Curtis Publishing Company v. Butts, supra.

In plaintiff's deposition it was established he was a candidate for the United States Senate and was trying to make the American Party a political force in Oklahoma. Clarence Thomas, who allegedly made the complained of accusation was Tulsa County Chairman. Plaintiff claimed not to have actually solicited funds but let an "ad" be placed in defendant's paper giving his office address and telephone as that of the party and the place where Wallace campaign funds could be mailed or brought. These funds were brought in and handled by plaintiff's secretary. Plaintiff and Thomas at one time were co-signers of checks against a party account established with funds brought into plaintiff's office. Later Thomas, plaintiff and plaintiff's secretary were co-signers. Plaintiff did not remember what any of the checks were for but thought most were sent to Wallace's headquarters in Alabama for supplies sent to Oklahoma. No accounting had ever been made by him or his secretary to anyone for any of the funds collected. Plaintiff stated his secretary received contributions in his office, and even though not officially appointed as the party's secretary, she acted in that capacity.

The federal courts at all levels have had numerous occasions to consider the "actual

malice" standard of New York Times and the "extreme departure" from responsible publishers reporting standards established in Curtis Publishing Co. v. Butts, supra. In St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, the trial in the Louisiana state court was completed prior to the decision in either New York Times or Curtis Publishing Company and resulted in a verdict for the plaintiff against St. Amant, the petitioner in the United States Supreme Court. Both men were candidates for public office. In a televised speech, St. Amant read verbatim an answer to one of a number of questions he had asked of a local teamsters union member concerning some of the activities of his political opponent. The answer charged his opponent with criminal conduct. St. Amant did not investigate the truth or falsity of the statement prior to making his televised political speech. Nor did he investigate the reputation for truth and veracity of the teamster member whose statement he quoted. It developed the statement was false. The Louisiana Court of Appeal in reversing the trial court said the record failed to show St. Amant had acted with actual malice as required by New York Times. The Louisiana Supreme Court reversed the appellate court and held St. Amant had recklessly disregarded whether the statements about Thompson were true or false. The United States Supreme Court granted certiorari. Mr. Justice White delivered the opinion. At 390 U.S. page 731, 88 S.Ct. page 1325, the court said:

" * * * Mr. Justice Harlan's opinion in Curtis Publishing Co. v. Butts, 388 U.S. 130, 153, 87 S.Ct. 1975, 1991, 18 L. Ed.2d 1094 (1967), stated that evidence of either deliberate falsification or reckless publication *'despite* the publisher's *awareness of probable falsity'* was essential to recovery by public officials in defamation actions. These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.

There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." [emphasis added].

and at page 732, 88 S.Ct. at page 1326 the court further said:

" * * * Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so *inherently improbable* that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." [emphasis added]

There is no allegation or evidence here that either the reporter or his newspaper had any awareness prior to publication of the probable falsity of Clarence Thomas' statement—if it was false. From none of the record can we conclude that the published statement was so inherently improbable that only a reckless person would have put it in circulation.

Rosenbloom v. Metromedia, Inc., D.C., 289 F.Supp. 737, rev. 3 Cir., 415 F.2d 892; cert. granted and C. A. Aff. 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296, also supports our affirmance of the trial court as does Gospel Spreading Church v. Johnson Publishing Company, 147 U.S.App.D.C. 207, 454 F.2d 1050, in which the granting of defendant's motion for summary judgment by the trial court was affirmed. See also Time Inc. v. Johnston, 448 F.2d 378, in which, after denial of both parties motions for summary judgment by the district court, the Fourth Circuit remanded with directions to enter judgment for defendant. Those cases relied upon the standards, tests

and criteria established in New York Times and Curtis Publishing Company.

In Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965, 20 A.L.R.3d 972, certiorari denied 385 U.S. 1011, 87 S. Ct. 708, 17 L.Ed.2d 548, Keogh, a congressman, sued the Washington Post and syndicated columnist, Drew Pearson, for the publication of alleged libelous information. The district court denied defendant's motion for summary judgment and the circuit court reversed. In its opinion the court carefully distinguished the pre-Times rule of law as it affected public official plaintiffs. It said the obvious purpose of Times and subsequent cases was to create a more restrictive rule of law than the earlier rule which had allowed juries to infer malice from the face of defamatory publications. It also said hostility, vindictiveness or other bad motives alone are not actionable; the subjective state of mind of the publisher though generally a jury issue should not always be, "especially where the issue is recklessness, which is ordinarily inferred from objective facts."; the court also quoted from Rosenblatt v. Baer, 383 U.S. at p. 92, 86 S.Ct. at p. 679, 15 L.Ed.2d at p. 609, [concurring opinion of Mr. Justice Stewart], "No matter how gross the untruth, the New York Times rule deprives a defamed public official of any hope for legal redress without proof that the lie was a knowing one, or uttered in reckless disregard of the truth."; "evidence offered in a libel case might be sufficient to raise a jury question as to a publisher's negligence but insufficient to raise one as to his actual malice." Finally the court said at 365 F.2d 972, 20 A.L.R.3d 982:

" * * * Pearson and his fellow columnists seek and often uncover the sensational, relying upon educated instinct, wide knowledge and confidential tips. Verification would be certain to dry up much of the stream of information that finds its way into their hands. Whether or not this would please a number of us is irrelevant. What matters is that a rule requiring verification in the absence of evidence that the publisher had good reason to suspect falsity would curtail substantially a protected form of speech."

We find that there were insufficient acts either plead or alluded to by way of the deposition or affidavits on file, if taken as true as they must be in ruling on either a demurrer or a motion for summary judgment, from which reasonable men could conclude "actual malice" or the *"highly unreasonable* conduct constituting an *extreme departure* from the standards of investigation and reporting ordinarily adhered to by responsible publishers" as set forth in Curtis, supra. The evidence fails to show either deliberate falsification or reckless publication or publisher's awareness of probable falsity. We find there is no substantial controversy as to a material fact. We hereby grant certiorari and affirm the trial court.

DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN, LAVENDER, BARNES and SIMMS, JJ., concur.