Richard D. JURKOWSKI, Appellant,

v.

Patrick CRAWLEY, Individually; Fraternal Order of Police Lodge of Midwest City, Oklahoma, a Corporation; James O. Parsons, Individually; Fraternal Order of Police Lodge of Oklahoma City, Oklahoma, an Unincorporated Association; Richard A. Boyd, Individually; Fraternal Order of Police Lodge of Oklahoma City, Oklahoma, an Unincorporated Association, and Griffin Television, Inc., an Oklahoma Corporation, Appellees.

No. 54053.

Supreme Court of Oklahoma.

Sept. 22, 1981.

Rehearing Denied Dec. 14, 1981.

Fielding D. Haas, Norman, for appellant.

Michael S. Homsey, Michael S. Homsey, Inc., Oklahoma City, for appellees Patrick Crawley and Fraternal Order of Police Lodge of Midwest City, Okl.

Philip F. Horning, James R. Moore, Horning, Johnson & Grove, Oklahoma City, for appellees James O. Parsons and Fraternal Order of Police Lodge of Oklahoma City, Okl.

D. C. Thomas, James W. Patterson, Oklahoma City, for appellees Richard A. Boyd and Fraternal Order of Police State Lodge.

A. P. Murrah, Jr., Robert D. Nelon, of Andrews Davis Legg Bixler Milsten & Murrah, Oklahoma City, for appellee Griffin Television, Inc.

HARGRAVE, Justice.

The plaintiff, Richard Jurkowski, prosecutes this appeal from the District Court of Oklahoma County, the Honorable Stewart Hunter, presiding. The final order appealed from is a summary judgment in favor of the defendants in an action to recover damages occasioned by publication of alleged defamatory falsehoods by defendant, Griffin Television, as a result of a civil conspiracy between Griffin and the remaining defendants. The remaining defendants are the Fraternal Order of Police of Oklahoma City, Midwest City, and their state lodge. Individual defendants are Patrick Crawley, James O. Parsons and Richard A. Boyd.

Plaintiff's petition alleged the defendants, acting singly and in concert through Griffin Television, falsely published a story that plaintiff, when Chief of Police of Lake Park, Florida in 1975, did conspire to stage a robbery with the intent of murdering two individuals during the apprehension portion of that crime. Plaintiff pled that the Fraternal order of Police of Midwest City expended funds for an investigation whose sole purpose was defaming plaintiff and obtaining his dismissal as Chief of Police of Midwest City. James O. Parsons and the Oklahoma City Fraternal Order of Police were alleged to have expended funds to complete the illusory investigation for the sole purpose of defaming plaintiff and obtaining his dismissal. Richard A. Boyd and the State Lodge of the Fraternal Order of Police are alleged to have entered into the defamation by placing at the remaining defendants' disposal funds for "the purpose of publishing and circulating the false and libelous allegations," and by writing or causing to be written scurrilous and inflammatory matter about plaintiff, with the intent of acquiring the dismissal of plaintiff from his post.

After the cause proceeded through an exhaustive routine of deposition discovery, a motion for summary judgment was filed by all defendants. The Court ruled upon that motion from the bench, and cited the

transcript of that ruling in his journal entry granting summary judgment for all defendants. Therein the Court assumed the story of a police officer conspiring to murder a known criminal was inherently improbable and thus case law required an independent investigation be made by the publisher to attempt to verify it prior to publication. The trial court also noted there is no foundation for allowing a court or jury to fix standards upon which to evaluate the quality of the independent investigation, as opposed to determining whether or not such investigation was made or not. The Court found that the record stood unchallenged on the fact that an independent investigation was conducted and that it reasonably led defendants to believe the truth of the allegation. In addition, the trial court found no evidence of actual malice considering all reasonable inferences to be drawn from the record. The resolution of the actual malice issue finally resolves this appeal.

The appellant contends here that the summary judgment should have been denied on the basis that the depositions, affidavits and other matter included in the record disclose a question of fact necessitating submission to the jury. Appellant contends that there is sufficient evidence to submit to the jury the question of whether the broadcasting station aired an improbable story about a public official, and that conduct was an "extreme departure from the standards of investigation ordinarily adhered to by responsible publishers," citing *Weaver v. Pryor Jeffersonian, 569 P.2d 967 (Okl.1977)*.

In *New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)*, the libel was published of a public figure, just as the Chief of Police of Midwest City is a public official. *Sullivan, supra*, states that consideration of a defamation action must be done in the presence of the realization that there exists a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide open, and that the discussion may well include vehement, caustic and some-times unpleasantly sharp attack on public officials. That opinion additionally notes that such a commitment to free debate carries with it "some degree of abuse [which] is inseparable from the proper use of everything; and in no instance is this more true than in that of the press." [1] Aside from the inevitable chance of frank abuse there is the fact that erroneous statement is inevitable in free debate, and that those erroneous statements must additionally be protected if the freedoms of expression are to have the breathing space they need to survive, therefore the constitutional privilege does not turn upon the truth, popularity ·or social utility of the ideas and beliefs considered. After discussion of the underpinnings of the conclusion, the *Sullivan* court stated:

> The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice" —that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

The great bulk of appellant's argument on appeal relates to this last statement quoted, arguing that there is evidence to justify the submission to the jury of the issue of whether the broadcaster proceeded with reckless disregard of the possible falsity of the story. In this regard, we note the parties to this appeal concede that the ultimate truth or falsity of the broadcast is a controverted issue of fact under this record.

■ In the cause before us the alleged defamation concerns the activities of appellant Jurkowski during the time he worked in the Lake Park, Florida Police Department as that department's Chief. As such, the accusations do not relate to the conduct of the affairs of office of appellant while Chief of Police of Midwest City. The statement inferring criminal conduct while in office at a prior time and place comes within the *Sullivan, supra*, public official rule

---

1. 4 Elliot's Debates on the Federal Constitution (1876) p. 571.

considered above as explained in *Garrison v. State of Louisiana, 379 U.S. 64, at 72, 76–78, 85 S.Ct. 209 at 214, 216–217, 13 L.Ed.2d 125 (1964).* The public official rule protects the paramount public interest in a free flow of information to the people concerning public officials. Anything which might touch on an official's fitness for office is relevant; dishonesty, malfeasance or improper motivation. The alleged misconduct is directly material to the plaintiff's fitness for office inasmuch as it refers to abuse of the same type authority plaintiff now holds.

Under the authority of *Curtis Publishing Co. v. Butts, 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1967),* it appears recovery may be had for a defamatory falsehood whose substance makes substantial danger to reputation apparent on a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigating ordinarily adhered to by responsible publishers. But the precept embodied in the holding of *Curtis Publishing Co. v. Butts* from the majority members of the Supreme Court of the United States on the standard by which a damage award may be constitutionally awarded in these cases is found in the opinion of Mr. Chief Justice Warren, concurring in result, beginning at 388 U.S. 162, 87 S.Ct. 1995. Therein, Part I of that opinion adheres to the actual malice standard of *New York Times.* The Chief Justice's concurring opinion was followed on that point by the separate opinions of Mr. Justices Brennan and White, and that of Mr. Justices Black and Douglas. The majority of the court, therefore, rejected Mr. Justice Harlan's formulation of a separate test for public officials and figures. At page 164, 87 S.Ct. at page 1996 of the official report of *Butts,* the statement is made to the effect that the definition of actual malice is not so restrictive as to limit recovery to the publication of a known falsehood in either the instance of public officials or figures, but that reckless disregard for the truth measured by the publisher's conduct will also expose him to liability. This statement was elaborated upon less than a year after *Butts,* in *St. Amant v. Thompson, 390 U.S. 727 (1968), at* 731, 88 S.Ct. 1323 at 1325, 20 L.Ed.2d 262. In that cause, the Louisiana Supreme Court held that St. Amant had broadcast false information about Thompson recklessly, though not knowingly. The Court stated:

> [These] cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. *There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.* Publishing with *such doubts* shows reckless disregard for truth or falsity and demonstrates actual malice. (Emphasis added).

Applying this standard the Court found the following factual conclusions did not prove that, in fact, the defendant entertained serious doubts in regard to the accuracy of a story: St. Amant had no personal knowledge of Thompson's activities and relied solely on a third party affidavit; the record was silent as to the veracity of the affiant; he failed to verify the facts with those who might have known the facts; he gave no consideration to the defamatory nature of the statements, and published heedless of the consequences, mistakenly believing he had no responsibility for the broadcast because he was merely quoting the third party's affidavit. At page 730 of Vol. 390 of the U.S. Reports, 88 S.Ct. at 1325, the Supreme Court stated:

> These considerations fall short of proving St. Amant's reckless disregard for the accuracy of his statements . . .

The considerations in the *St. Amant* cause, listed above, although ruled insufficient to establish reckless disregard on certiorari, are not all present in the cause before this Court. In the cause before the Bar, the defendant had no personal knowledge of Jurkowski's conduct, and relied upon an investigation and a sworn statement from three citizens supporting the broadcast. In addition, the broadcast was generally supported by allegations from a federal lawsuit.

In rejecting *St. Amant's* cited facts as establishing reckless disregard, the Court stated nothing referred to by the State Court indicated an awareness by St. Amant of the probable falsity of Albin's statement about Thompson. The Supreme Court discussed other facts from the record which supported the failure to demonstrate actual awareness of probable falsity. They read:

St. Amant made his broadcast in June, 1962. He had known Albin since October 1961, when he first met with members of the dissident Teamsters faction. St. Amant testified that he had verified other aspects of Albin's information and that he had affidavits from others. Moreover, Albin swore to his answers, first in writing and later in the presence of newsmen. According to Albin, he was prepared to substantiate his charges. St. Amant knew that Albin was engaged in an internal struggle in the union; Albin seemed to St. Amant to be placing himself in personal danger by publicly airing the details of the dispute.

The dissent of Mr. Justice Fortas in *St. Amant*, 390 U.S. at pp. 734–735, 88 S.Ct. at p. 1327 places the decision in perspective:

. . . If he had made a good-faith check, I would agree that he should be protected even if the statements were false, because the interest of public officials in their reputation must endure this degree of assault. But since he made *no check* I agree with the Supreme Court of Louisiana that *New York Times* does not prohibit recovery. (Emphasis added).

■ The record before us is controlled by *St. Amant's* teaching. Whether or not the defendant checked out the affidavit and its serious criminal allegations is not conclusive. The plaintiff must demonstrate *actual knowledge* of *probable falsity* to recover as a public official suing to recover for a defamatory falsehood. The only extent that an investigation enters into the consideration of the premises is if the investigation is made and through it, actual knowledge is imparted. The record before the Court does not contain facts which would justify a finding that the defendant here

actually had any doubt that the libelous statement was true at the time it was broadcast. The investigation which was made did not produce a single fact contradicting the broadcast statement and the plaintiff refused a blanket offer to discuss charges made against him.

There must be sufficient evidence to permit the conclusion that the defendant *in fact entertained* [at the time the publication was made] serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

It may be said that such a test puts a premium on ignorance, encourages the irresponsible publisher not to inquire, and permits the issue to be determined by the defendant's testimony that he published the statement in good faith and unaware of probable falsity. Concededly the reckless disregard standard may permit recovery in fewer situations than would a rule that publishers must satisfy the standard of the reasonable man or the prudent publisher.

*St. Amant v. Thompson, 390 U.S. 727 (1968), at 731, 88 S.Ct. 1323 at 1325–1326, 20 L.Ed.2d 262.*

■ It is noted that the lower court stated that the publisher was required by case law to pursue an independent investigation of the facts. This statement appears to contradict the statement made in *St. Amant* that failure to investigate at all does not in itself show bad faith. *St. Amant, supra, at 733, 88 S.Ct. at 1326.* Such a statement inferring the necessity of an investigation can be found in *Brown v. Skaggs-Albertson, 563 F.2d 983 (CCA 10 1977), at 987.* Citing from *Bland v. Lawyer-Cuff Co., 72 Okl. 128, 178 P. 885 (1919),* and *Imo Oil & Gas Co. v. Knox, 154 Okl. 100, 6 P.2d 1062 (1932),* the Court said in *Brown, supra,* that malice may be inferred in the situation where the defendant has no reasonable basis for believing that the statement is true. This would be the case where there had been a failure to make an adequate investigation. Citing *Oberman v.*

*Dun & Bradstreet, 460 F.2d 1381 (7 Cir. 1972). Oberman* states a qualified or conditional privilege may be lost under Illinois law if it is abused, i. e., where the publisher does not believe in the truth of the defamatory matter, or has no reasonable grounds for believing it to be true, a fact which may be inferred from all circumstances surrounding the transaction including the failure to make a proper investigation. These cases, *Oberman, supra,* and *Brown, supra,* deal not with the Constitutional First Amendment privilege to publish and its concomitant restrictions on the law of libel, but with the qualified privilege regarding business information. *Oberman, supra,* devotes a generous portion of the opinion distinguishing between the scope of the two concepts, and *St. Amant* and other cases in the same vein clearly demonstrate that failure to investigate does not establish the actual malice standard required to subject a publisher to liability for defamation of a public official. Much of appellant's argument on appeal and in the lower court is calculated to expose evidence of improper and inadequate investigation of the facts behind the publication. *Washington v. World Publishing Co., 506 P.2d 913 (1973), at 917,* contains a statement to the effect that on summary judgment actual malice may be demonstrated, in the constitutional libel sense, by a showing of "highly unreasonable conduct constituting an extreme departure from standards of investigation and reporting ordinarily adhered to by responsible publishers," citing *Curtis Publishing Co. v. Butts, supra.* This same standard is discussed on p. 918 of *Washington, supra.* This Court's last paragraph states the pleadings, affidavits and depositions in the cause do not disclose an issue of actual malice or of highly unreasonable conduct constituting an extreme departure from the standards of investigative reporting, etc., and thus affirmed the trial court's action granting summary judgment to the defendant. Insofar as the last paragraph of *Washington* can be read to imply that the

breach of the "highly unreasonable conduct" standard mentioned above, supported by evidentiary matter, would alone defeat a summary judgment of a publisher against a public officer or figure, this last paragraph is *dictum.* It is contradicted within the four corners of the opinion at 918 of *Washington v. World Publishing Co., supra,* where the Court quoted from *St. Amant v. Thompson, supra,* 390 U.S. at 731, 88 S.Ct. at 1325, as follows:

> Evidence of either deliberate falsification or reckless publication "despite the publisher's awareness of probable falsity" was essential to recovery by public officials in defamation action.

It is indispensable that the public official show actual awareness of probable falsity prior to publication even when the publication can be deemed "reckless." Such point is emphasized in *St. Amant* when the following language appears immediately after the last quotation from *St. Amant, supra:*

> These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth . . .

The above quotation illustrates the indispensability of the requirement that the defendant in fact entertain serious doubt when showing actual malice through reckless disregard for the truth. The essence of the requirement would seem to stem from the disability of the government under the First Amendment to interfere with the judgment of a publisher; thus unless there is evidence of "guilty knowledge" of the falsehood, in fact, laid at the publisher's feet prior to publication, recovery would have a chilling effect on the First Amendment. The deliberate factual lie[2] has no protection under the First Amendment.

2. As distinguished from ideas and belief. See *NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).* "The Constitutional protection does not turn on the truth, popularity or social utility of the ideas and beliefs which are offered."

*Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); Gertz v. Robert Welch, 418 U.S. 323 at 341, 94 S.Ct. 2997 at 3007, 41 L.Ed.2d 789 (1974).* It is proof of the guilty knowledge prior to publication that demonstrates the First Amendment immunity does not apply; nothing more is required to escape defendant's summary judgment and nothing less is permitted.

The indispensability of evidence, and later proof, of the conclusion that the defendant in fact, (subjectively) entertained serious doubts as to the truth of his publication was emphasized in the *Herbert v. Lando* decision found at 99 S.Ct. 1635 (1979). There the petitioner, Herbert, filed an interlocutory appeal to obtain documents claimed privileged under an "editorial process" theory. The Supreme Court held the state of mind of the defendant a critical element of plaintiff's claim and allowed discovery. In beginning the opinion the Court stated that a public figure or official is precluded recovery in a defamation action by the First and Fourteenth Amendments absent proof of publication with actual malice. The Court then stated:

> Under this rule, absent knowing falsehood, liability requires proof of reckless disregard for truth, that is, that the defendant in fact entertained serious doubts as to the truth of his publication.
>
> . . . .
>
> Such 'subjective' awareness of probable falsity . . . may be found if there are obvious reasons to doubt the veracity of the information or the accuracy of his reports.

■ Assuming, *arguendo*, that this highly improbable story creates an obvious reason to doubt the accuracy of the report, in the first instance, the subjective awareness of probable falsity necessary for recovery is not present where an investigation is made which cannot be shown in the record to have disclosed information inconsistent therewith.[3] The record is barren of evidentiary material indicating a substantial controversy as to this material fact and Griffin's summary judgment was properly granted under Rule 13, 12 O.S.Supp.1980, Chap. 2 App. *Runyon v. Reid, 510 P.2d 943 (Okl.1973).*

■ The determination here made that the trial court correctly sustained Griffin's motion for summary judgment fatally affects the plaintiff's claim against the remaining defendants. The sole defamation which plaintiff pleads the defendants conspired to publish is the two newscasts herein determined not to be actionable libel. The definition of a conspiracy has been said to embrace the combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. *Barsh v. Mullins, 338 P.2d 845 (Okl.1959).* Such a statement of the nature of a civil conspiracy presupposes that there can be no conspiracy where the act complained of and the means employed are lawful. *Walker v. Mills, 182 Okl. 480, 78 P.2d 697 (1938); Shaw v. Cross, 83 Okl. 273, 201 P. 811 (1921).* This Court has previously held that a privilege defeating a claim of defamation renders the statements not unlawful, thereby defeating a claim of conspiracy where the means employed to achieve that purpose are also lawful. *Hughes v. Bizzell, 189 Okl. 472, 117 P.2d 763 (1941).* No claim is made that the defendants' alleged concerted acts in furtherance of the broadcast were unlawful, and summary judgment for remaining defendants was therefore proper.

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and WILLIAMS, DOOLIN and OPALA, JJ., concur.

HODGES, LAVENDER and SIMMS, JJ., concur in result.

---

**3.** First Amendment privilege thus protects the broadcaster under these facts. The creators of our constitutional system were aware that privileges such as discussed here carry with them the potential for abuse, but they assumed that risk should be borne by society as a social cost of an informed citizenry. Thus the law does not always require a broadcaster or reporter to carry out his profession with the reasonable care that others are held to in the practice of their respective professions. One could but hope that reportorial standards of care in the profession would reflect a high degree of competence despite the broad protection afforded the profession.