**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 20 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PIERRE LE BAUD, M.D.,

    Plaintiff - Appellant,

v.

ERIC E. FRISCHE, M.D.; JAMES E.
FAHEY, JR., M.D.; R. BRENT
SMITH, M.D.; RANDY SEGLER,
SR.; DONALD S. BENTLEY; SHON
ERWIN; MARY LOUISE LAWSON;
HERB STONEHOCKER; URBANE
SKINNER; RANDY L. CURRY;
COMANCHE COUNTY HOSPITAL
AUTHORITY, d/b/a Comanche
County Memorial Hospital,

    Defendants - Appellees.

No. 97-6109

(D.C. No. CIV-95-918-L)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **McKAY**, and **KELLY**, Circuit Judges.

---

    Plaintiff-Appellant, Dr. Pierre Le Baud, is an orthopedic surgeon who held

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

medical staff privileges at Defendant-Appellee Comanche County Memorial Hospital [Memorial] in Lawton, Oklahoma. After Plaintiff's staff privileges were revoked by Memorial, Plaintiff filed an action seeking damages and injunctive relief for alleged violations of the antitrust laws of the United States and the State of Oklahoma. Plaintiff also sought damages pursuant to 42 U.S.C. § 1983 for alleged violations of his due process rights, and he asserted pendent state law libel, slander, and deceit claims against certain defendants associated with Memorial. In addition to Memorial, Plaintiff named the following individuals as defendants: two competing orthopedic surgeons, Eric E. Frische and James F. Fahey; the former chief of staff of Memorial, R. Brent Smith; the administrator of Memorial, Randy L. Curry; the chief operating officer of Memorial, Randy Segler, Sr.; and the five members of the Board of Trustees of Memorial.[2] The district court granted Defendants' summary judgment motion on all of Plaintiff's claims, and Plaintiff appeals. We review the grant of summary judgment de novo. See Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995).

Plaintiff moved to Lawton and began practicing at Southwestern Medical Center [Southwestern] in March 1992. Before Plaintiff moved to Lawton, Defendants Dr. Frische and Dr. Fahey were the only two orthopedic surgeons

---

[2] The members of the Board of Trustees are Donald S. Bentley, Shon Erwin, Mary Louise Lawson, Herb Stonehocker, and Urbane Skinner.

-2-

practicing in Lawton. Almost a year after Plaintiff moved to Lawton, he acquired staff privileges at Memorial.

On January 10, 1994, the Director of Surgical Services at Memorial sent an incident report concerning Plaintiff to Defendant Dr. Smith, who was then Memorial's Chief of Medical Staff. Based on this report, Defendants Dr. Smith and Mr. Curry advised Plaintiff that an investigation of his practice would be conducted. An orthopedic surgeon from Tulsa, Oklahoma, reviewed examples of Plaintiff's hospital patient records. After considering the first review of Plaintiff's practice, Defendants Dr. Smith and Mr. Curry determined that further review was necessary.

Two orthopedic surgeons from Baltimore, Maryland, reviewed the records of the entire orthopedic surgery department, namely, Plaintiff, Dr. Frische, and Dr. Fahey. After the Baltimore surgeons orally reported their findings, Dr. Smith and Mr. Curry summarily suspended Plaintiff's surgical privileges at Memorial. Several days later, the Baltimore surgeons transmitted a written report which stated:

> The arthroscopic technique of Dr. LeBaud was inadequate in all cases reviewed, showing a lack of proper visualization, orientation, diagnosis, joint distraction, and technique. This was harmful to the patients who suffered significant articular cartilage damage.
>
> There was a significant problem noted in judgement of surgical indications . . . where patients were subjected to unnecessary

anesthesia and procedures.

>There was a major problem in selecting and carrying out the proper surgical procedure with disastrous results for the patients. . . .

>. . . .

>This doctor appears willing to undertake complex procedures with which he has no or little experience, and which should routinely be referred to centers specializing in such problems.

R., Vol. III, Doc. 32 at 994.

Pursuant to the bylaws, the Credentials Committee reviewed the report and unanimously recommended revoking all of Plaintiff's privileges at Memorial.[3] At Plaintiff's request, the Hearing Panel granted review of the Credentials Committee's recommendation, and Plaintiff received notice of the hearing date and a list of proposed witnesses and exhibits. At the hearing, the Credentials Committee presented the testimony of Dr. Smith, Mr. Curry, and the Baltimore surgeons, all of whom were cross-examined by Plaintiff's counsel. Plaintiff testified on his own behalf and presented the testimony of Dr. Patrick Evans, an orthopedic surgeon in Oklahoma City, Oklahoma. The Hearing Panel voted unanimously to recommend to the Board of Trustees that it affirm the recommendation of the Credentials Committee and revoke all of Plaintiff's staff

---

[3] Although Dr. Frische was a member of the Committee, he recused himself from this meeting and from the Hearing Panel which later reviewed the Credentials Committee's recommendation.

privileges at Memorial.

Although Plaintiff had the right to appeal the Hearing Panel's decision pursuant to Memorial's bylaws, he did not. The bylaws provide that if appellate review is not requested within ten days of notice of the recommendation, "both parties shall be deemed to have accepted the recommendation involved and it shall thereupon become final and immediately effective." Id., Vol. IV, Doc. 37 at 1151. Several weeks after the Hearing Panel's recommendation, the Board of Trustees formally voted on the recommendation and revoked Plaintiff's staff privileges.

Plaintiff contends that his staff privileges at Memorial constituted a property interest that was revoked without procedural due process. He recites a litany of procedural protections that he alleges he was denied. The due process clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To trigger Fourteenth Amendment due process protections, Plaintiff must first show that under Oklahoma state law he possesses a property or liberty interest in his employment. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Vinyard v. King, 728 F.2d 428, 430 & n.5 (10th Cir. 1984). "[A] property interest is determined by whether the terms of employment created by contract, federal statute, city charter or an employee manual 'create a sufficient

expectancy of continued employment to constitute a property interest which must be afforded constitutionally guaranteed due process.'" Vinyard, 728 F.2d at 432 (footnotes omitted) (quoting Hall v. O'Keefe, 617 P.2d 196, 200 (Okla. 1980)); see Roth, 408 U.S. at 577.

Before the trial court and on appeal, Plaintiff has made little effort to prove that he had a protected property interest, essentially assuming that he had a property interest in his staff privileges. See R., Vol. VI, Doc. 52 at 2327. Plaintiff cites Vinyard for the holding that a protected property interest can arise from an employee manual. See Vinyard, 728 F.2d at 432. Plaintiff, however, has failed to provide any evidence in the record as to the length of his appointment and fails to cite any provisions in the bylaws that restrict the termination of staff privileges, such as "for cause" revocation. The bylaws provide procedures to be followed in disciplinary actions but procedural rules do not themselves create a constitutionally-protected property right. See Asbill v. Housing Auth. of Choctaw Nation, 726 F.2d 1499, 1502 (10th Cir. 1984). As we explained in Asbill:

> At least five circuits have adopted the view that procedural protections alone do not create a protected property right in future employment; such a right attaches only when there are substantive restrictions on the employer's discretion. For example, if a statute, regulation, or policy specifies the grounds on which an employee may be discharged, or restricts the reasons for discharge to "just cause shown," then the employee has a right to continued employment until such grounds or causes are shown.

Id. (footnote omitted); see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532,

-6-

541 (1985) ("'Property' cannot be defined by the procedures provided for its deprivation."). Plaintiff has not shown any substantive restrictions on Memorial's authority to revoke his staff privileges, and our review of the record has revealed none. See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995) (stating that this court will not search the record for evidence to support counsel's allegations contained in the appellate brief). As we have stated previously in a case with a pro se plaintiff, this court will not "assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992). Based on the foregoing, this court concludes that Memorial's bylaws did not create a property interest in Plaintiff's staff privileges that is subject to federal constitutional guarantees.

Plaintiff also briefly argues that he was denied a liberty interest, namely, his reputation in the local medical community, without due process of law. We do not address the merits of Plaintiff's contention because, although Plaintiff made such a claim in his Complaint, he abandoned that claim when he failed to mention his alleged liberty interest in his Answer to Defendants' Motion for Summary Judgment, see R., Vol. V, Doc. 42 at 1574-77, and in his Objection to Defendants' Joint Motion for Summary Judgment, see id., Doc. 41 at 1531-32. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721-22 (10th Cir. 1993);

O'Connor v. City & County of Denver, 894 F.2d 1210, 1214 (10th Cir. 1990). We therefore affirm the district court's decision granting summary judgment on Plaintiff's due process claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof . . . .").

We also affirm the district court's determination that Plaintiff abandoned his deceit claim against Defendant Mr. Smith. Plaintiff's failure to respond to Defendants' motion for summary judgment on that claim or to address the claim on appeal leads us to this result. See R., Vol. VI, Doc. 52 at 2332-33; see Lyons, 994 F.2d at 722; O'Connor, 894 F.2d at 1214. Pursuant to Defendants' request for sanctions under Federal Rule of Appellate Procedure 38, we grant Mr. Smith five hundred dollars ($500.00) in addition to his costs. Plaintiff's failure to dismiss Mr. Smith from the lawsuit on appeal warrants these sanctions.

Plaintiff asserts that the district court improperly granted summary judgment against him on his libel and slander claims against Drs. Frische and Fahey. Both libel and slander claims require publication by the defendant. See Okla. Stat. tit. 12, §§ 1441, 1442. We agree with the district court that, because

Plaintiff produced no evidence of any defamatory communication by Dr. Fahey,[4] it appropriately granted summary judgment for Dr. Fahey on this claim.

The defamation claims against Dr. Frische arise out of two letters written solely by Dr. Frische in October 1994 to the chief of staff at Southwestern. To be actionable, Dr. Frische's communications must have been unprivileged and false or malicious. See Okla. Stat. tit. 12, §§ 1441, 1442, 1444.1. In granting Dr. Frische summary judgment on the defamation claims, the district court relied on the truth of Dr. Frische's communication in the letters. See Okla. Stat. tit. 12 § 1444.1. We agree with the district court that Dr. Frische presented much evidence that supported the truth of his assertions in the letters, see R., Vol. III, Docs. 31, 32, including a statement from Plaintiff's own expert witness. See id., Vol. IV, Doc. 57. However, the summary judgment standard requires us to hold that no reasonable jury could find Dr. Frische's communication to be untrue. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). Because Plaintiff provided some evidence that a reasonable jury could rely on to find Dr. Frische's letters false, see R., Vol. V, Doc. 43 at 1613, we cannot hold that truth has provided a complete defense in this case.

Instead, we affirm the district court's summary judgment because Dr.

---

[4] Evidence of communication with the Southwestern chief of staff without any evidence that the content of the communication was defamatory, see R., Vol. III, Doc. 2, at 586; Vol. V at 1948, is insufficient to survive summary judgment.

Frische's communication was privileged. In Oklahoma, a communication is conditionally privileged if the defendant "'was making the statement to protect certain defined interests'" and the privilege was not abused. Wright v. Haas, 586 P.2d 1093, 1096 & n.3 (Okla. 1978) (citation omitted); see Meistrell v. McPhail, 788 P.2d 1387, 1389 (Okla. Ct. App. 1989). The court in Meistrell explained that "[c]onditional privilege arises from public policy concerns. Communication in matters concerning the safety and health of the public must be unrestricted." Meistrell, 788 P.2d at 1389; cf. Farooq v. Coffey, 616 N.Y.S.2d 112, 112 (N.Y. App. Div. 1994) ("A [common law] qualified privilege extends to statements about a physician's qualifications by and/or to hospital officials."). As a practicing physician at Southwestern, Dr. Frische had a responsibility to "protect the public from services by physicians who for any reason might be less than competent doctors." Meistrell, 788 P.2d at 1389; cf. Strubhart v. Perry Mem. Hosp. Trust Auth., 903 P.2d 263, 278 (Okla. 1995) ("[W]hen a hospital, *through its personnel*, knows or in the exercise of ordinary care should know that they have granted staff privileges to an incompetent doctor we . . . impos[e] a duty on the hospital to take some reasonable or appropriate steps to ensure that action is taken to protect patients . . . .") (emphasis added). Dr. Frische's two letters to Southwestern's chief of staff articulated the type of public policy concerns that a conditional privilege is intended to protect:

-10-

This letter is to alert you to quality problems at Southwestern Medical Center which I bring to you in your capacity as Chief of Staff of the hospital. I bring these problems to your attention in confidentiality and within the limits of what I believe to be legitimate peer review for such concerns. . . .

. . . .

It is my considered opinion that Dr. LeBaud's work is below the standard of care for this or any other community. As long as he continues to do surgery, innocent and unsuspecting patients will continue to be needlessly injured.

I would urge you to review this situation as quickly as possible, most preferably with an outside reviewer who has experience in doing such reviews.

R., Vol. V, Doc. 44 at 1948-49; see id. at 1950.

Dr. Frische would lose his conditional privilege if Plaintiff could prove that Dr. Frische abused it, that is, if Dr. Frische knew his communication to be false or if he acted in reckless disregard as to its truth or falsity. See Haas, 586 P.2d at 1097 & n.6. The Oklahoma Supreme Court has held that Plaintiff's required proof of abuse is analytically identical to the New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964), burden for actual malice. See id. In this case, the main issue is whether the pleadings and affidavits indicated that a genuine issue of fact existed as to whether Dr. Frische's statements about Plaintiff were made with malice. To prove actual malice, Plaintiff must prove that Dr. Frische "'in fact entertained serious doubts as to the truth of his publication,' or had a 'high degree of awareness of . . . probable falsity.'" Luper v. Black Dispatch Publ'g

-11-

Co., 675 P.2d 1028, 1033 (Okla. Ct. App. 1983) (citations omitted). On thorough examination of the record, we hold Plaintiff failed to present sufficient evidence of malice to raise a material issue of fact and, therefore, defeat Dr. Frische's motion for summary judgment. Plaintiff produced no evidence indicating that Dr. Frische knew his communication to be false or that he acted in reckless disregard as to the communication's truth or falsity. Id. (stating that "'*proof of the guilty knowledge prior to publication* . . . is required to escape defendant's summary judgment'") (alteration in original) (quoting Jurkowski v. Crawley, 637 P.2d 56, 62 (Okla. 1981)).

We also affirm the district court's summary judgment on Plaintiff's defamation claim against Mr. Curry and Memorial. Mr. Curry and Memorial are entitled to immunity for the allegedly defamatory statements contained in the first report transmitted to the National Practitioners Data Bank. As we explained in Brown v. Presbyterian Healthcare Services, 101 F.3d 1324 (10th Cir. 1996), cert. denied sub nom. Miller v. Brown, ___ U.S. ___ , 117 S. Ct. 1461 (1997):

> The Health Care Quality Improvement Act confers immunity on any person who makes a report to the National Practitioner Data Bank "without knowledge of the falsity of the information contained in the report." 42 U.S.C. § 11137(c) (1994). Thus, immunity for reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false.

Brown, 101 F.3d at 1334. We agree with the district court that there was "no

evidence from which a reasonable jury could conclude that the report was false and that [Mr.] Curry or Memorial knew it was false." R., Vol. VI, Doc. 52 at 2323.

Plaintiff questions whether the trial court properly denied his motion for leave to amend his complaint to add First Health West [FHW] as a party. We review the trial court's decision for an abuse of discretion. See Foman v. Davis, 371 U.S. 178, 182 (1962); First City Bank v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1132 (10th Cir. 1987). Absent consent of Defendants, Plaintiff could amend his complaint only by leave of court. See Fed. R. Civ. P. 15(a). The court's leave to amend should "be freely given when justice so requires," id., but the decision to grant such leave is within the trial court's discretion. See Foman, 371 U.S. at 182; First City, 820 F.2d at 1132-33. There is no abuse of that discretion if the court relies on an appropriate reason for denying leave to amend. See id. The district court based its decision on appropriate reasons for denying leave to amend, namely, the prejudice to Defendants and the undue delay that the amendment would cause. After a thorough review of the record, including the district court's Order denying Plaintiff's motion to amend, we hold that the court did not abuse its discretion in denying Plaintiff's motion.

Because FHW is not a party in this lawsuit, we evaluate Plaintiff's antitrust claims without reference to FHW's conduct. Plaintiff alleges a Sherman Act

-13-

section one conspiracy to restrain trade claim against Memorial and Dr. Frische, a section two monopolization claim against Dr. Frische, and a section two conspiracy to monopolize claim against Dr. Frische and Memorial.[5] See 15 U.S.C. §§ 1, 2.

Section one of the Sherman Act forbids "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." Id. § 1. For Plaintiff to escape summary judgment on his section one claim he must have produced sufficient evidence to support a jury finding of concerted action in the form of an agreement between Memorial and Dr. Frische which unreasonably restrained trade in the relevant market, namely, orthopedic services in Lawton. Unilateral action will not support a section one claim. See Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 639 (3rd Cir. 1996) (stating that unilateral action cannot violate section one because a plaintiff must prove the existence of an agreement). We agree with the district court that Plaintiff failed to provide evidence of any concerted action by Memorial and Dr. Frische to revoke Plaintiff's privileges at Memorial. We agree that

> [i]t is undisputed that Frische did not initiate the peer review process, did not attend the Credentials Committee meeting, and did not testify before the Hearing Panel. Nor did Frische identify the files that were

---

[5] We agree with the district court that Plaintiff abandoned his state law antitrust claim because his Answer to Defendants [sic] Motion for Summary Judgment made no mention of the claim. See O'Connor, 894 F.2d at 1214.

> reviewed by [the Baltimore surgeons]; and, in fact, Frische's files were reviewed as well. In short, there is nothing to tie him to the revocation of plaintiff's privileges at Memorial.

R., Vol. VI, Doc. 52 at 2325.[6]

Plaintiff complains that the district court failed to address his evidence of a conspiracy between Dr. Frische and Memorial to withhold referrals from Plaintiff. Plaintiff alleges that Memorial's standard contract for primary care physicians "contained language which implied that the Hospital, rather than the physician, would determine to whom referrals might be made." Opening Br. at 28. He also alleges that Memorial maintained a list of approved specialty physicians that included Dr. Frische but not Plaintiff.[7] It is unclear, however, whether the provision in the contract that Plaintiff alleges would prevent referrals to him has anything to do with referrals, and certainly it has nothing to do with prohibiting referrals to doctors with privileges at Memorial. The challenged contract was produced by Dr. Glenn B. Burt, a doctor who stated that he received the contract when he considered becoming a primary care physician at a clinic associated with Memorial. The language in the Memorial contract that Plaintiff alleges gave

---

[6] Since Plaintiff has provided no support for his attempt to link Dr. Frische to the revocation of Plaintiff's privileges by suggesting that the person who initiated the incident report was a former employee of Dr. Frische, we agree with the district court's determination that Plaintiff's allegation is "at best–nothing more than fanciful speculation." R., Vol. VI, Doc. 52 at 2325.

[7] No such list has been produced and no doctor who has practiced at Memorial has testified of its existence.

-15-

Memorial authority to direct referrals away from Plaintiff and to Dr. Frische simply says:

> G. Doctor agrees that, during the term, and for a period of two years after the termination, of this Agreement for whatever reason, he will not, nor make any attempt to, directly or indirectly, without [Memorial's] written consent, (1) employ, go into business with or render financial assistance to any person who is or becomes employed by or associated with [Memorial], its subsidiaries or affiliates, or who had been employed by or associated with any of them during one year preceding such termination, (2) solicit or induce or in any manner attempt to solicit or induce any person employed by, or an agent of, [Memorial] or any of its affiliates to terminate his employment or agency, or (3) *solicit, induce or attempt to solicit or induce, any supplier or patient of [Memorial] or any of its affiliates to cease being (or any prospective supplier or patients not to become) a supplier or patient of [Memorial] or any of its affiliates.* Doctor agrees that he will maintain a "hands-off" policy with respect to the persons described in this paragraph.

R., Vol. V, Doc. 43 at 1673-74 (emphasis added). The highlighted language is the only language that even faintly resembles an attempt to control referrals. Moreover, no reasonable construction of that language would prohibit referrals to a doctor with privileges to practice at Memorial, including Plaintiff who had staff privileges during Dr. Burt's contract negotiations with Memorial in 1993.

Even if we were to concede, which we do not, that the disputed language prohibited referrals to a doctor with privileges to practice at Memorial, Plaintiff has not produced evidence of even a single doctor who has entered into such an

agreement with Memorial.[8]  Dr. Burt, producer of the contract at issue, never

entered into any agreement with Memorial.  There is no evidence that Dr. Frische,

or any other Memorial doctors, entered into any contract with Memorial which

controlled referrals.  Without evidence of an agreement to control referrals

between Memorial and Dr. Frische or any other doctors, Plaintiff cannot escape

summary judgment on his section one claim.

We next address Plaintiff's monopolization claims under section two of the

Sherman Act.

> "The elements of monopolization under Section 2 are 'the
> possession of monopoly power in the relevant market' and 'the
> willful acquisition or maintenance of that power as distinguished
> from growth or development as a consequence of a superior product,
> business acumen, or historic accident.'"

Tarabishi v. McAlester Reg'l Hosp., 951 F.2d 1558, 1567 (10th Cir. 1991)

(quoting Reazin v. Blue Cross & Blue Shield, 899 F.2d 951, 973 (10th Cir.), cert.

denied, 497 U.S. 1005 (1990) (citation omitted)), cert. denied, 505 U.S. 1206

(1992).  "[P]roof of monopoly power requires a showing of both power to control

prices and power to exclude competition."  Id. at 1567; see Reazin, 899 F.2d at

967.  Because we agree with the district court that Plaintiff has offered no

---

[8]  Dr. Burt's statement in his affidavit that the Memorial Vice President, Jim Ivey, stated that the contract was "a standard contract of Memorial," R., Vol. V., Doc. 43 at 1668, does not prove that any doctors entered into the agreement with Memorial.

evidence showing Dr. Frische's power to control prices, "a critical element of proof of monopoly power in this circuit," Tarabishi, 951 F.2d at 1568, we affirm summary judgment on Plaintiff's section two monopoly claim against Dr. Frische.

Plaintiff also argues that Memorial and Dr. Frische conspired to monopolize in violation of section two. The elements of such a claim are "'(1) . . . a combination or conspiracy to monopolize; (2) . . . overt acts done in furtherance of the combination or conspiracy; (3) . . . a specific intent to monopolize; and (4) . . . an appreciable effect upon commerce.'" Id. at 1570 (quoting Dreiling v. Peugeot Motors of Am., Inc., 850 F.2d 1373, 1382 (10th Cir. 1988)). Similar to our determination of Plaintiff's section one conspiracy claim, Plaintiff did not produce sufficient evidence for a jury to find that Memorial and Dr. Frische entered a combination or conspiracy to monopolize. Nor did Plaintiff produce sufficient evidence that Memorial and Dr. Frische had the specific intent to exclude Plaintiff from the Lawton orthopedic surgery field. See American Tobacco Co. v. United States, 328 U.S. 781, 809 (1946). Because Plaintiff failed to produce evidence sufficient to support a genuine issue of fact, we also affirm summary judgment on this alleged antitrust violation.

The district court's grant of summary judgment to Defendants is

AFFIRMED,[9] and we GRANT Mr. Smith his costs plus Five Hundred Dollars ($500) in damages. Because we affirm the district court's decision, we need not address Plaintiff's request for recusal.[10]

Entered for the Court

Monroe G. McKay<br>Circuit Judge

---

[9] We do not consider Plaintiff's breach of contract claim because no breach of contract claim was asserted in his complaint and because Plaintiff never amended the complaint to assert the claim. The breach of contract action is not mentioned in Defendants' Brief in Support of Their Joint Motion for Summary Judgment on All Counts, and, not surprisingly, the trial court never ruled on the non-existent breach of contract claim. Therefore, in accordance with our general rule, we will not consider an issue on appeal that was not raised below. See Rademacher v. Colorado Ass'n of Soil Conservation Dists. Med. Benefit Plan, 11 F.3d 1567, 1571-72 (10th Cir. 1993); Walker v. Mather, 959 F.2d 894, 896 (10th Cir. 1992).

[10] Federal Rule of Appellate Procedure 28(j) governs citation of supplemental authorities and provides that "[t]here shall be a reference either to the page of the brief or to a point argued orally to which the citations pertain, but the letter *shall without argument* state the reasons for the supplemental citations." Fed. R. App. P. 28(j) (emphasis added). Plaintiff invokes Tenth Circuit Rule 31.6 as authority for filing his seven page document entitled "Supplemental Authority." Rule 31.6 does not expand the rule of submitting supplemental authorities. Because Plaintiff has violated Federal Rule of Appellate Procedure 28(j), we grant Defendants' motion to strike Plaintiff's Supplemental Authority. We decline, however, to grant Defendants' request for sanctions for this inappropriate filing.