**Ladonna BROWN and Craig Brown, Plaintiffs-Appellees,**

**v.**

**SKAGGS–ALBERTSON'S PROPERTIES, INC., Defendant-Appellant.**

**No. 76–1463.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 21, 1977.

Decided Oct. 7, 1977.

Rehearing Denied Oct. 28, 1977.

James D. Grigsby and M. Clyde Faulkner, Oklahoma City, Okl., for plaintiffs-appellees.

Michael C. Stewart, Oklahoma City, Okl., for defendant-appellant.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY, Chief Judge.*

WILLIAM E. DOYLE, Circuit Judge.

Appellant Skaggs-Albertson's Properties, Inc. is apparently the owner of a chain of retail grocery outlets in Oklahoma. The problem arose as a result of the plaintiff, Ladonna Brown, giving a check to the store in Oklahoma City, Oklahoma, for the purpose of paying for groceries which she had purchased at one of the stores. There is no irregularity on the face of the check. It was nevertheless returned to the store unpaid due to the fact that Skaggs had failed to endorse the check. Notwithstanding the return of it, it was sent through again without having been endorsed, and so when it was finally returned the second time it was ruled non-negotiable. Thereafter, the store communicated with Craig Brown, husband of Ladonna, some two weeks after the original delivery of the check and informed Mr. Brown that the check had been returned and would have to be replaced. He agreed to replace it and proceeded on the next day to the defendant's store, where he spoke with an employee concerning a letter saying that as a result of the return of the check the Browns' name was to be placed on a list of problem checks, which list was circulated by an organization called Check Verification Association of Central Oklahoma (CVA). As a result of this conversation, Brown was assured that he would not be placed on the list.

The CVA would appear from the record to be engaged in acquiring information concerning problem checks. The member stores report to CVA all checks which have been returned to them dishonored and which remain in their possession for seven days. The list is then printed by CVA and circulated to its members. The members have agreed beforehand not to accept checks from people on the list.

Unfortunately, an additional mistake was made. This took place on April 22, 1975, on which day a report was sent in to CVA mistakenly showing that the Browns' check had been returned because of insufficient funds. The report which indicated that the problem had been taken care of was not received by CVA until Friday, April 25. Testimony showed that CVA could have rectified the problem if they had been notified by telephone on Tuesday, April 22. If this had been carried out, the Brown name would have been deleted. As a consequence, however, of the failure to communicate with the CVA immediately after the substitute check was written, an additional check given by Mrs. Brown was rejected at the Skaggs-Albertson's store. The very next day the Browns visited another grocery store where they asked if their check would be accepted. They were told that it could not be because their name was on the list. During the subsequent month the Browns made purchases for cash, and after about a month they were told at another store that they were not on the list.

An action was brought in the United States District Court for the Western District of Oklahoma in libel. The transaction relied on was alleged injuries resulting to the plaintiffs as a result of a false statement communicated by Skaggs-Albertson to CVA. The defendant-appellant challenged the sufficiency of the evidence by motion seeking a directed verdict. However, this motion was denied and the cause was submitted to the jury, which returned a verdict against defendant-appellant awarding the sum of $20,000 actual damages and $10,000 punitive damages. The defendant's motions for judgment notwithstanding the verdict and for new trial as well as its motion for remittitur were denied.

* Of the United States Court of Customs and Patent Appeals, Washington, D.C., sitting by designation.

On appeal the contentions are, first, that the statement made by Skaggs to CVA was a conditionally or qualifiedly privileged communication.

Secondly, that there was a lack of presence of malice so as to render the privilege inapplicable.

Thirdly, it is argued that there was not a legally sufficient publication.

Other alleged errors include:

Submission of the issue of punitive damages to the jury. The reason, it is argued, is that there was no evidence in support of such submission.

Appellant's final plea is that the trial court should have granted a remittitur of damages and that this court should grant such relief.

## I.

█ It is not seriously contended by defendant-appellant that the communication from it to CVA was not defamatory. The Oklahoma statute defines libel (12 Okla. Stat.Ann. § 1441) as being "a false or malicious unprivileged publication . . . which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence . . . ."

Some argument has been made by appellant that the communication from appellant to the CVA did not impute a crime to the Browns. We disagree. Oklahoma law provides that the making of a check which is subsequently dishonored as a result of insufficient funds constitutes *prima facie* evidence of intent to defraud and of knowledge of the insufficient funds. Such an act, accompanied by intent to defraud, is under Oklahoma law a felony if the amount in question exceeds $20.00. The Browns' check was in the amount of $47.08. Accordingly, since the Browns' check was perfectly valid, reporting that they had issued an insufficient funds check clearly indicates guilt of a criminal act of the grade of felony. On its face then, it is defamatory.

## II.

█ In the first instance, the conditions and relationships are such as to create a qualified privilege occasion. Such exists where the defendant is seeking to vindicate an interest in a reasonable manner and for a proper purpose. It is said that such a privilege exists when the communication is fairly made by a person in the discharge of some public or private duty whether legal or moral or in the conduct of his own affairs in matters where his interest is concerned. *See* Prosser, Law of Torts, 4th ed., pp. 785, 786. *See also Bland v. Lawyer-Cuff Co.*, 72 Okl. 128, 178 P. 885 (1919). Communications, then, in furtherance of legitimate business interests are privileged, but the privilege is qualified being subject to the communication being within the bounds of the privilege. If it is made for purposes outside the privilege or with malice, the privilege is lost. *See M. F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167 (10th Cir. 1968); *Hammett v. Hunter*, 189 Okl. 455, 117 P.2d 511 (1941); *Bland v. Lawyer-Cuff Co., supra.*

In the latter case it was recognized that conditional privilege exists in connection with the report on the financial condition of a business to an interested party. Later cases have extended this to recognition of a qualified privilege in connection with reports of credit agencies. Prosser at 790. *See, e. g., Oberman v. Dun and Bradstreet, Inc.*, 460 F.2d 1381 (7th Cir. 1972); *Altoona Clay Prods. Inc. v. Dun & Bradstreet, Inc.*, 286 F.Supp. 899 (W.D.Pa.1968); *Roemer v. Retail Credit Co.*, 3 Cal.App.3d 368, 83 Cal. Rptr. 540 (1970); *Bartels v. Retail Credit Co.*, 185 Neb. 304, 175 N.W.2d 292 (1970).

█ It would appear, then, that since CVA is serving a social interest and since also the defendant was carrying out the purposes of CVA by reporting problem checks to it, the occasion here involved was a qualifiedly privileged one provided the communication was made in good faith and was thus free of malice. Malice in the sense of ill will and an express design to inflict an injury was not present, but it can

consist of an unreasonable and wrongful act done intentionally, without just cause. *See Imo Oil and Gas Co. v. Knox*, 6 P.2d 1062 (Okl.1932), and *cf. Bland v. Lawyer-Cuff Co., supra.* Malice may be inferred in the situation where the defendant has no reasonable basis for believing that the statement is true. This would be the case where there had been a failure to make an adequate investigation. *Oberman v. Dun & Bradstreet, supra.*

■ In the case at bar the conduct involved in the communication to CVA was at the very least negligence. Simple negligence would not, however, be enough to establish implied malice. It must rise to the level of recklessness. *See Dun & Bradstreet v. Nicklaus*, 340 F.2d 882 (8th Cir. 1965). In Oklahoma also this is the accepted standard in assessing and awarding punitive damages. *See Park v. Security Bank & Trust Co.*, Okl., 512 P.2d 113 (1973) (a defamation case); *Tomlinson v. Bailey*, 289 P.2d 384 (Okl.1955).

■ The fact that the check was stamped "endorsement missing" and twice returned for that reason makes the case one of aggravated conduct sufficient for the jury to infer that malice was present.

### III.

We finally consider whether the trial court's instruction on privilege and malice was adequate.[1]

Defendant-appellant's challenge to this instruction is addressed to the fact that the trial court allowed the jury to determine whether a qualified privilege was present. The argument is that the occasion was privileged in that the appellant and CVA were engaged in advancement of a business interest which gave rise to the privileged occasion. For this reason it is said that it was confusing for the court to have instructed the jury that it was its function to determine whether the statement was privileged or not. As we view the instruction, the trial court was addressing the ultimate question of the applicability of conditional privilege—whether the communication was malicious or not malicious. The conditions applicable to this determination were set forth accurately.

■ From a search of the Oklahoma cases we have not been able to find that the initial presence or absence of qualified privilege is in that state a question of law. In any event, because a finding of malice defeats the privilege, the determination whether the qualified privilege eventually

1. The full text of the instruction is as follows: * * * Malicious, as that term is used herein, means characterized by or involving malice, not necessarily in the sense of being actuated by ill will or hatred, but in the sense of intentionally doing an act the known and necessary consequences of which are injury to the person. You are instructed that defendant was actuated by malice, within the meaning of this instruction, if in publishing the communication complained of, defendant acted not in good faith but in bad faith toward plaintiffs, and with an intent to injure them, or in willful, wanton and reckless disregard for their rights and interests.

Malice may be proved directly or it may be proved indirectly, that is, by reasonable inference or inferences to be drawn from all of the facts and circumstances in evidence. It is for you to determine whether malice on the part of defendant toward plaintiffs has been shown.

If the jury has found that the communication complained of was both false and malicious, then you are instructed that it was unprivileged. If, however, you have found that the communication, though false, was not malicious, then you must determine whether the communication made was qualifiedly privileged. A "qualifiedly priviled (sic) communication" is one made in good faith upon a subject matter in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty to perform. The communication is made in good faith if made in an honest belief as to its truth, arrived at after a fair and impartial investigation, or if made upon reasonable grounds for such honest belief as to its truth.

If you have found that the communication complained of was false and malicious, or was false and not qualifiedly privileged, then you must further determine whether the communication was such as would expose plaintiffs to public hatred, contempt, ridicule or obloquy, or would tend to deprive them of public confidence. * * *

is applicable is a jury question which is dependent upon questions of fact.

Prosser in his text on the Law of Torts, 4th ed., p. 796, in saying that existence of privilege is a question of law, talks about whether the *occasion* is privileged in the first instance and not whether the privilege shall ultimately apply so as to permit the defendant to escape liability. He is speaking then of the misuse of the occasion or the abuse of the privilege as a jury question. It is here that malice, express or implied, is in issue.

■ Considered in this light then, the instruction was not prejudicial because the only issue for the jury to determine was whether the defendant had exceeded the privilege; whether malice was to be implied in which case the privilege was lost. Accordingly, we do not regard the instruction as prejudicial or reversible.

## IV.

■ In support of its contention that the evidence is insufficient to support the award of money damages, general and special, appellant contends that the most that was proven was libel per quod so as to *require* proof of special damages. As we have pointed out above, the defamation in suit imputed the commission of a crime; so even if it were to be regarded as libel per quod, the exception applicable in a slander case, and cases imputing the commission of an offense would apply and would support the plaintiffs' claims for general damages. The nature of the imputation here was serious and highly injurious. The unjustifiable imputation of the commission of a crime together with the resultant humiliation and embarrassment to the plaintiffs justified the submission to the jury of the issue of damages and justified as well the award which the jury made. Moreover, it was proper for the court to submit the issue of punitive damages to the jury. Moreover, the evidence was sufficient to support a jury verdict that the appellant acted recklessly and wantonly; hence, the trial court

properly submitted the issue of punitive damages.

Appellant's final point appeals to this court to either order a remittitur or to refer the cause to the district court for that purpose. It is argued that the damages are so excessive as to call for this action.

■■ The remittitur procedure is a matter peculiarly within the discretion of the trial judge. *Walker v. Boulet*, 473 F.2d 1265 (9th Cir. 1973); *Kennair v. Mississippi Shipping Co.*, 197 F.2d 605 (2d Cir. 1952). For this court to order a remittitur at this eleventh hour in the proceedings would require a determination by us that the trial court had abused its discretion. In that connection, Oklahoma recognizes a broad jury discretion to determine the amount of damages for intangible injuries such as damage to reputation, humiliation, etc. The Oklahoma court has said that before a verdict of the jury will be set aside as excessive, it must appear that the verdict is so excessive as to "strike mankind, at first blush, as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption." *Park v. Security Bank & Trust Co.*, 512 P.2d 113 (Okl.1973).

We do not view the jury awards in the case at bar as reaching the proportions which would be necessary in order to justify the setting aside of or reduction of the verdict.

The judgment of the district court is affirmed.