Larry HART d/b/a Larry Hart Contracting, Appellee,

v.

Raymon McVAY and Commercial Insurance Agency, Appellants.

No. 75007.

Supreme Court of Oklahoma.

April 7, 1992.

Rehearing Denied June 11, 1992.

Michael J. Hester, Ardmore, for appellee.

William J. Bergner, Oklahoma City, for appellants.

HODGES, Vice Chief Justice.

This case is on appeal after a jury trial in the District Court of Carter County. The jury found for the plaintiff and awarded him $100,000 in damages. The trial court assessed part of the costs of transcribing the record on appeal against the defendants. We affirm.

In 1985, the plaintiff, Larry Hart (Hart), first contracted with the State of Texas (State) to do mowing. As part of each mowing contract, the State required a performance bond. In 1985 and 1986, Hart obtained these bonds through defendant, Commercial Insurance Agency (Agency). Defendant, Raymon McVay (McVay), worked for Commercial Insurance Agency as chair of the board, as a general manager, and as a producing insurance agent.

In anticipation of receiving a contract from the State, Hart submitted financial information to the Agency in January of 1987 so that the Agency could start processing the data. However, the Agency did not submit any of the financial information to the bonding company, Midwest Indemnity Corporation (Midwest), until April 10, 1987. In January when Hart submitted the financial information to the Agency, Carolyn Rodriguez was handling the Hart account. When Ms. Rodriguez left the agency in February of 1987, McVay took over Hart's account. McVay admitted that he did not submit the information to Midwest and took no steps to insure that the information had been sent to Midwest before April 10. Mr. Wood, the expert witness for the defendant, testified that the information should have been sent three months and a minimum of three to six weeks prior to the contract documents being sent.

On March 23, 1987, Hart was told that he had been awarded a two-year contract for $84,000 for mowing from the State. On April 9, 1987, Hart received written notification. That contract, like all the mowing contracts with the State, was contingent on Hart obtaining a performance bond. The contract documents showed that the bond had to be returned to the State by May 6, 1987. On April 10, the proposed contract and accompanying specification book were delivered to the Agency. That same day, McVay sent the financial records, the proposed contract, and accompanying specification book to Midwest.

After Hart submitted the contract and accompanying documents to the Agency, he and his wife contacted the Agency frequently about the status of the application. On at least ten occasions, Hart was assured by McVay that he would get the

bond. Between April 10 and April 27, McVay did not contact Midwest. On April 27, a representative of Midwest contacted McVay and asked for additional documents that McVay had in his files. About 4:00 p.m. on Friday, May 1, 1987, McVay informed Hart's wife, who was also his bookkeeper, that Midwest had denied the bond.

McVay said that he did not know of another bonding company to which to send the application. McVay also told Hart's wife that Hart would need an additional forty thousand dollars of collateral and that the contract would have to be rewritten as a one-year renewable contract for a bond to issue. Hart testified that he could have gotten the needed collateral through a letter of credit.

McVay got the documents back from the Agency on Monday, May 4. Hart contacted several other agencies and was told that three days was not enough time to process the application. Hart lost the mowing contract and subsequently suffered other financial losses as a result of failing to get a performance bond.

Hart then filed suit for negligence for failing to use reasonable diligence to obtain a bond and for failing to advise Hart in a timely manner that he would not receive the bond. At the end of Hart's evidence and then again at the end of all the evidence, McVay and the Agency (collectively, defendants) moved for a directed verdict. The trial judge denied both motions. The jury returned a verdict for Hart for $100,000. The trial court denied the defendants' motion for a judgment notwithstanding the verdict.

On appeal, the defendants have raised the following five propositions: (1) The trial court erred in denying the defendants' motions for a directed verdict; (2) The trial court erred in denying the defendants' motion for judgment notwithstanding the verdict; (3) Hart did not meet his burden of proof of causation; (4) The trial court erred in its instructions to the jury on damages; and (5) The trial court erred in assessing costs for transcribing designated portions of the record. The first three propositions all center on the question of whether Hart proved that the defendants breached their duty to Hart and that Hart's injury was caused by the defendants' negligence.

█ In an action at law, this Court will not disturb a jury verdict if it is supported by "any competent evidence reasonably tending to support the verdict of the jury." *Walker v. St. Louis–San Francisco Ry. Co.*, 646 P.2d 593, 597 (Okla.1982). However, the causal connection between the injury and the negligence cannot be based on "inference upon inference or presumption upon presumption." *Duncan Bros. v. Robinson*, 294 P.2d 822, 823 (Okla.1956). Recognizing these rules, we find that the jury verdict was based on competent evidence.

The evidence showed the following facts which support the jury's verdict. In 1985 and 1986, Hart had gotten several bonds through the Agency. Thus, the Agency knew about Hart's financial status. In January 1987, Hart submitted financial information to the Agency in anticipation of receiving a contract from the State. The Agency did not submit the information to any bonding company until April 10. The defendants' expert stated that the information should have been submitted at least three weeks before the contract. Between April 10 and the time Midwest denied the bond, McVay had only two conversations with Midwest. The first was to confirm that Midwest had received the information. As to the second conversation, a representative of Midwest called McVay because he needed more information. The defendants' expert testified that he would have called the bonding company at regular intervals to check on the progress of the application.

█ Defendants had a duty to act in a reasonably prudent manner. There was competent evidence offered by the defendants' expert witness establishing the standard of care. There was also evidence that the defendants breached that standard of care by failing to submit Hart's financial information to Midwest before April 10, failing to follow-up on the progress of the application, and by assuring Hart that he would get the bond. This breach of duty caused Hart to lose the contract.

The defendants argue that the issue is whether their actions caused the bond to be denied. That is not the issue; the issue is whether the defendants' action caused the loss of the contract. If the defendants had submitted the information before April 10 and properly followed-up, then Hart would have been notified of the denial in time to correct the deficiencies or to get the bond through another agency. Hart presented evidence which reasonably tended to show that the defendants' breach of duty caused Hart to lose the contract and suffer financial loss.

■■ The defendants object to instructions number 19 and number 20. Neither instruction is included as part of the record certified by the clerk of the trial court. The defendants attempt to supplement the record by attaching those instructions to their brief. "This court may not consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court." *Chamberlin v. Chamberlin,* 720 P.2d 721, 723 (Okla.1986). Because the instructions are not included in the record certified by the district court clerk, this Court will not review the instructions and presumes their correctness.

The defendants invoked Rule 1.21 of the Rules of Appellate Procedure, Okla.Stat. tit. 12, ch. 15, app. 2 (1981). Rule 1.21 provides:

> If the party taking an appeal asserts as a ground for reversal that the evidence is insufficient to support the verdict or judgment, he need not designate for transcription *any* of the evidence in the case, but instead he may serve on the adverse party a statement specifying the material facts which he alleges were not proved. Within ten days after the receipt of such statement the opposing party shall file in the trial court, mail to the other parties in the case (or their counsel) and give to the court reporter a statement designating for transcription so much of the evidence as he relies upon to establish proof of the specified facts, at the cost of the appellant. If more

evidence than necessary is designated for transcription, the trial court shall order the designated portions abbreviated or direct that the excess be transcribed at the cost of the designating party....

■ Pursuant to Rule 1.21, the trial court assessed transcript costs against the defendants, except for the transcript of the testimony of Dr. Rawleigh Ralls. The defendants, appellants in this case, argue that the only witnesses that testified at trial as to liability are Larry Hart and Theresa Hart. Thus, their testimony was the only part of the trial transcript that was necessary to respond to the Petition in Error. The defendants conclude that under Rule 1.21, they, the defendants, should not have been assessed costs for the other portions of the record.

The defendants' appraisal of the testimony regarding liability is in error. In their brief in chief, the defendants state: "Taking all of the evidence that was presented from Larry Hart, Theresa Hart, Raymon McVay and Courtney Wood, *the only witnesses testifying as to liability....*" This statement directly contradicts the defendants' argument that Larry Hart and Theresa Hart were the only witnesses testifying on the issue of liability. After reviewing the record, we agree with the trial court that the entire trial transcript, except for the transcript of the testimony of Dr. Rawleigh Ralls, was necessary to respond to the Petition in Error.

In conclusion, we find that the jury's verdict was supported by competent evidence. The trial judge correctly assessed the costs of the transcript against the defendants. We affirm the jury's verdict and the assessment of transcript cost.

JUDGMENT OF THE DISTRICT COURT AFFIRMED.

OPALA, C.J., and LAVENDER, HARGRAVE and ALMA WILSON, JJ., concur.

SIMMS, KAUGER and SUMMERS, JJ., concur in result.