Pamela Kne JOFFE, Personal Representative of the Estate of Robert Joffe, Deceased, Appellee,

v.

Clayton VAUGHN, an individual; KOTV, Inc., a Delaware corporation; and David Cassidy, an individual, Appellants,

and

A.H. Belo Corporation, a Texas corporation, and Mark Bogatay, an individual, Defendants.

No. 79505.

Court of Appeals of Oklahoma, Division No. 3.

Oct. 26, 1993.

Certiorari Denied March 7, 1994.

300

Sam P. Daniel, S. Douglas Dodd, and Charles S. Plumb, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, for appellants.

Stephen Q. Peters, Sam P. Daniel, III, Short, Harris, Turner, Daniel & McMahan, and Gary L. Richardson, Richardson, Meier & Stoops, Tulsa, for appellee.

*OPINION*

BAILEY, Judge:

Clayton Vaughn, David Cassidy and KOTV, Inc. (collectively Appellants or individually by name) seek review of judgment on jury verdict for Pamela Kne Joffe (Pamela), personal representative of the estate of Robert Joffe, deceased, (Robert) in Pamela's action against Appellants and Defendant Mark Bogatay (Bogatay) for intentional infliction of emotional distress. In this appeal, Appellants assert error by the Trial Court (1) denying Appellants' demurrer to the evidence, motion for directed verdict, motion for judgment notwithstanding the verdict, and motion for new trial and/or remittitur, and (2) admitting/excluding certain evidence.

After receiving a degree in broadcast journalism from Southern Methodist University, Robert began working for KOTV as a reporter in 1986. He became a well known and award winning member of the news department while independently producing numerous "special projects" and actively participating in community civic and charitable affairs.

In 1989, KOTV promoted Robert to co-anchor of the 5:00 p.m. newscast. In November 1989, the KOTV station manager suspended Robert for three weeks following the broadcast of a segment of the "Month of the Child" series produced by Robert which news director David Cassidy (Cassidy) and others felt contained a violation of journalistic ethics. Robert returned to his reporting, special assignments, and co-anchor duties without further incident.

In February 1990, KOTV's "command" anchor for well over fifteen years, Clayton Vaughn (Vaughn), called Cassidy at work and demanded Cassidy come to Vaughn's home on an urgent matter. There, Vaughn told Cassidy that Vaughn's hair dresser, Bogatay, had informed Vaughn that Bogatay had had a homosexual liaison with Robert. Cassidy in turn repeated the allegation to the station manager who then confronted Robert. Despite denial by Robert and a pledge by KOTV to thoroughly investigate the matter, neither KOTV management nor Cassidy would reveal the name of the accuser to Robert, nor did Robert know Vaughn was the source. KOTV did not inform the police, hire a private investigator, nor allow Robert to participate or assist in any investigation. Rather, Cassidy was assigned to investigate the matter, which investigation resulted in a memorandum to management containing little additional information but which was fraught with misinformation.[1] Robert retained counsel but still could not obtain the name of his accuser or any details of the alleged incident in order to demonstrate its falsity.

Within a month of the allegation, KOTV management gave Robert the option of resigning or suffering termination. Robert refused to resign, and KOTV then terminated Robert's employment without explanation under the termination clause of his employment contract.

Throughout the ordeal, Robert became the subject of rumors and speculation throughout the Tulsa news community, none positive. After marrying his then-fiance, Robert began his own investigation, within two months discovering the name of his accuser. Robert then filed suit against Vaughn, Cassidy, Bogatay, KOTV and its parent company, A.H. Belo Corporation, for slander, wrongful termination, intentional interference with contractual relations against Vaughn only, and intentional infliction of emotional distress.

During pendency of the lawsuit, Robert took his own life. Robert's spouse, Pamela, as personal representative of Robert Joffe's estate, obtained substitution as party plaintiff. The slander action failed to survive Robert's death, and the Trial Court eventually disposed of all remaining causes of action except the tort claim for intentional infliction of emotional distress. After presentation of the evidence, the Trial Court submitted the emotional distress claim to the jury which returned a verdict for Pamela, assessing $2,000,000.00 in actual damages and $2,000,-000.00 in punitive damages. The Trial Court denied Appellants' post-trial motions attacking the verdict, and Appellants appeal.

In their first proposition of error, Appellants assert Pamela failed to adduce sufficient evidence of Appellants' extreme and outrageous conduct with intent to inflict emotional distress and harm upon Robert. Thus, argue Appellants, the Trial Court erred in denying their demurrer to the evidence, motion for directed verdict, and motion for judgment notwithstanding the verdict.

■■■■ When the lower court considers a demurrer to the evidence or a motion for directed verdict, "it must consider as true all evidence and all reasonable inferences favorable to the party against whom the demurrer or motion is directed, and disregard any conflicting evidence which is favorable to the

---

1. Cassidy's entire "investigation" consisted of talking to Bogatay. The information gained therein was published to KOTV management by memorandum. Both at deposition and trial, Bogatay's testimony contradicted the Cassidy memorandum. None of the alleged corroborating witnesses was contacted (although Pamela Powell, named by Cassidy as a witness for Bogatay, testified for Joffe and directly controverted both the Cassidy memorandum and Bogatay's testimony). Further, Cassidy failed to check the date of the alleged incident, the bar or the automobiles allegedly involved, or the apartment where the incident allegedly took place.

demurrant or movant." [2] A demurrer or motion for directed verdict should be overruled unless there is an absence of evidence or proof which shows a right to recover on the part of the party opposing the demurrer or motion.[3] Stated otherwise, the demurrer or motion should be overruled unless the party opposing the demurrer or motion has not demonstrated a prima facie case for recovery.[4] Likewise, a motion for judgment notwithstanding the verdict is proper under circumstances in which the moving party attacks the sufficiency of the evidence to support the verdict only when a directed verdict should have been granted.[5]

 In the present case, Pamela presented evidence and reasonable inferences drawn therefrom which, if believed, demonstrated that Vaughn desired to anchor the 5:00, 6:00 and 10:00 p.m. newscasts as solo anchor; that Vaughn disliked Robert and opposed his promotion to co-anchor on the 5:00 p.m. newscast, replacing Vaughn; that Vaughn commanded power and influence at KOTV; that Cassidy maintained a personal vendetta against Robert; that Cassidy and KOTV management, with Vaughn's assistance, concocted a plan to "get rid of" Robert, including discrediting Robert in the news market; that the allegation of homosexual activity was not credible; that Appellants' conduct in handling the allegation of homosexual activity and subsequent termination of Robert's employment was extreme, outrageous, and intentional; and that Robert suffered as a result. Under these circumstances, we find Pamela presented sufficient evidence of the elements of the tort of intentional infliction of emotional distress to withstand Appellants' motions.[6] Thus, we find no error in the Trial Court's rulings thereon.

 In the alternative, Appellants assert a privilege exists protecting communications in furtherance of legitimate business interests, thus barring Pamela's claim of intentional infliction of emotional distress.[7] However, the business privilege may be destroyed if the communication was made with "malice," and that term has been defined as:

[A]n unreasonable and wrongful act done intentionally, without just cause. Malice may be inferred in the situation where the defendant has no reasonable basis for believing that the statement is true. This would be the case where there had been a failure to make an adequate investigation.

*Brown v. Skaggs–Albertson's Properties,* 563 F.2d 983, 986 (10th Cir.1977).[8]

In the present case, the Trial Court instructed the jury (over Pamela's objection) on the business privilege claimed by Appellants. So instructed, the jury nevertheless concluded either that the communication regarding Robert's alleged homosexual activity did not further a legitimate business interest, or that such communication was made with malice. Stated otherwise, the jury, as the trier of fact, rejected Appellants' privilege defense, and we find sufficient competent evidence in the record, apparently believed by the jury, to support that conclusion. We will not substitute our judgment on the facts for that of the jury, and we therefore reject these allegations.

 Appellants next complain the Trial Court erroneously excluded evidence crucial to their case. Specifically, Appellants contend the Trial Court should have admitted depositions of three witnesses who knew Robert as a teenager when he worked as a

**2.** *Messler v. Simmons Gun Specialties, Inc.,* 687 P.2d 121, 130 (Okl.1984).

**3.** *Messler,* 687 P.2d at 130.

**4.** *Ray v. Redpath,* 145 Okl. 69, 291 P. 546 (1930).

**5.** 12 O.S.1991 § 698.

**6.** In order to submit a claim for intentional infliction of emotion distress to the jury, the Trial Court must first determine whether Appellant's "conduct *may* reasonably be regarded as so *ex-* *treme and outrageous* as to permit recovery, or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine...." The same is true for determining the existence of severe emotional distress. *Breeden v. League Services Corp.,* 575 P.2d 1374, 1377 (Okl.1978).

**7.** Citing, inter alia, *Brown v. Skaggs–Albertson's Properties, Inc.,* 563 F.2d 983 (10th Cir.1977).

**8.** *See also, Kirschstein v. Haynes,* 788 P.2d 941 (Okl.1990).

"teen reporter" for a television station in Kentucky. In support thereof, Appellants assert this evidence would have demonstrated a "pattern of behavior on the part of [Robert] which was consistent with the poor judgment for which his employment was terminated," and would have challenged the "extensive and one-sided positive character evidence." The Trial Court specifically held the proffered testimony too remote in time and relevance, and the evidence of any juvenile adjudication inadmissible.

■ The relevance and admission of evidence are matters addressed to the sound discretion of the Trial Court whose rulings thereon will not be disturbed absent a showing of abuse of discretion.[9] That is, a judgment will not be reversed for alleged error in the admission or rejection of evidence "unless it appears from an examination of the entire record that such error had probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."[10] We find no abuse of discretion, miscarriage of justice or violation of constitutional or statutory right in the exclusion of the preferred evidence.

We here note Appellants' opinion that because Pamela failed to adduce sufficient evidence to support a verdict for intentional infliction of emotional distress, this case was actually tried to the jury on the theory of wrongful termination[11] notwithstanding the Trial Court's dismissal of that cause of action. Thus, argue Appellants, any evidence tending to show Robert in a negative light would support their defense of proper termination of Robert's employment. In support thereof, Appellants state the jury failed to hear evidence of the "extremes to which [Robert] was willing to go in order to promote himself into the public eye and a position of importance."

We find this argument untenable in view of Appellants' willingness, without benefit of a reasonable investigation, to believe Bogatay's apparently unsubstantiated allegation that Robert walked into a well-known "gay" bar, "picked up" a stranger, Bogatay, who recognized Robert as a KOTV personality, took Bogatay to an apartment for a homosexual liaison, then bragged about his co-anchor position on KOTV. We specifically reject this aspect of Appellants' argument.

■ Appellants next attack the Trial Court's exclusion of certain testimony offered to impeach testimony of one of Pamela's witnesses directly controverting the testimony of Bogatay. However, Appellants did not offer this testimony until some nine days into the trial. The Trial Court, after allowing Pamela—with minimal preparation and time—to take the witness's deposition, heard argument and ruled the witness's testimony inadmissible as cumulative and constituting unfair surprise. We agree with the Trial Court and find no abuse of discretion, miscarriage of justice or violation of constitutional or statutory right in the exclusion of the proffered evidence.[12]

■ Appellants also attack the Trial Court's exclusion of an exhibit offered during the third day of trial arguably demonstrating KOTV's justified termination of Robert. However, Appellants did not apparently tender the exhibit at pre-trial conference, and the exhibit was not listed on the pre-trial order.[13] In support of its admission, Appel-

9. 12 O.S.1991 §§ 2402, 2403; *Whiteley v. OKC Corp.*, 719 F.2d 1051 (10th Cir.1983); *Cooper v. State*, 671 P.2d 1168 (Okl.Cr.1983); *Samara v. State*, 398 P.2d 89 (Okl.1964), cert. den. and appeal dismissed, 381 U.S. 354, 85 S.Ct. 1556, 14 L.Ed.2d 681.

10. *Samara v. State*, 398 P.2d at 89, 90.

11. Amicus curiae briefs filed by Oklahoma State Council for Human Resources Management and Oklahoma State Chamber of Commerce and Industry also argue the true cause of action tendered to the jury in this case was one of damages for wrongful termination "disguised" as inten-

tional infliction of emotional distress. However, the Trial Court disposed of the action for wrongful termination and instructed the jury only on intentional infliction of emotional distress, and we will not look beyond the face of the verdict on the basis of subjective speculation. We therefore find these briefs unresponsive to the issues on appeal.

12. *See,* footnote 9, supra.

13. The record does reflect that although the document had previously been given to Pamela's counsel, the document had curiously and recent-

lants baldly state that by excluding the proffered evidence, "[O]ne must assume that the Trial Court was convinced [Pamela] could not make her case of [intentional infliction of emotional distress] and the jury would return a [verdict for Appellants]."

We assume no such thing. The pre-trial order controls the issues to be litigated,[14] allowing the parties to rely on the pre-trial order exhibit and witness lists to prepare their cases,[15] and the Trial Court is vested with extensive authority to enforce its pre-trial order.[16] We further note Appellants fail to cite any authority in support of this proposition.[17] We therefore find no error in the Trial Court's exclusion of the proffered exhibit.

■ Appellants next complain the Trial Court erred in permitting Pamela to testify concerning statements made to her by Robert both before and after his termination, arguing Pamela's testimony constituted "blatant hearsay designed to elicit sympathy for [Robert] and prejudice against your Appellants." We note that once again Appellants proffer unsupported and subjective belief in support of their argument, failing to cite any legal authority [18] other than to refer to "hearsay." We have reviewed the record and find the subject testimony directed primarily to Pamela's observations of Robert's post-termination behavior including his depression, self-imposed home confinement, sleeplessness, irritability, refusal of telephone calls, etc. Further, the record suggests the Trial Court allowed the testimony as offered only to prove that the words were spoken and not to prove the truth of matter contained therein. Moreover, Pamela's testimony regarding Robert's statements was merely cumulative to Robert's deposition testimony admitted

into evidence. Under these circumstances, we find no abuse of discretion, miscarriage of justice or violation of constitutional or statutory right in the admission of Pamela's testimony.[19]

■ Appellants next claim error by the Trial Court in the admission of a letter from Robert to Pamela written after Robert's termination. After protracted argument by counsel as to the letter's relevance and whether a pre-trial objection thereto had been interposed, the Trial Court admitted the letter as demonstrating Robert's state of mind.[20] Appellants also objected to the letter as prejudicial.

Having examined the document, we first note the letter refers to Robert's termination only indirectly and does not mention Appellants or Defendants; rather, it is a love letter written on Yom Kippur. Once again, the relevance and admission of evidence are matters addressed to the sound discretion of the Court, whose rulings thereon will not be disturbed absent a showing of abuse of discretion.[21] Under the facts and circumstances of the present case, we find no abuse of discretion, miscarriage of justice or violation of constitutional or statutory right in the admission of the letter from Robert to Pamela.[22]

■ Finally, Appellants challenge the Trial Court's denial of their motion for new trial and/or remittitur. A motion for new trial is addressed to the sound discretion of the lower court to be applied in accordance with recognized principles of law; absent error as to a pure question of law, or arbitrary or capricious action, this Court must

---

ly been "relocated" after two years of extensive discovery.

**14.** *Shadid v. Monsour,* 746 P.2d 685 (Okl.1987).

**15.** *Dailey v. Barnhart,* 768 P.2d 907 (Okl.1988).

**16.** *Short v. Jones,* 613 P.2d 452 (Okl.1980).

**17.** *See, Vaughn v. Texaco, Inc.,* 631 P.2d 1334 (Okl.App.1981) ("An argument in a brief which is unsupported by citation of authority is not sufficient to overcome the presumption in favor of

the correctness of the trial court's decision and will not be considered.").

**18.** *Vaughn v. Texaco, Inc.,* 631 P.2d at 1334.

**19.** Footnote 9, supra.

**20.** *See,* 12 O.S.1991 § 2803(3) recognizing a "state of mind" exception to the hearsay rule.

**21.** Footnote 9, supra.

**22.** Id.

indulge in the presumption in favor of the Trial Court's ruling.[23]

Further, Oklahoma recognizes the jury has broad discretion to determine the amount of damages for intangible injuries which determination will not be set aside as excessive unless it is "so excessive as to 'strike mankind, at first blush as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion partiality, prejudice or corruption.'"[24] Moreover, an award of punitive damages "lies peculiarly within the province of the jury and it will not be casually interfered with on appeal when it is claimed to have been actuated by passion or prejudice."[25]

In the present case, Appellants' motion for new trial and/or remittitur raises the same alleged errors as brought forth in this appeal, i.e., sufficiency of evidence to support the verdict, error by the Trial Court in evidentiary rulings, and excessiveness of the verdict, influenced by passion and prejudice. Considering our previous holdings affirming the Trial Court's denial of Appellants' challenges to the evidence and the Trial Court's evidentiary rulings, and in absence of error on a pure question of law, we find no abuse of discretion by the Trial Court in denying Appellants' motion for new trial and/or remittitur.

The judgment on jury verdict for Pamela is therefore AFFIRMED.

HUNTER, P.J., and GARRETT, J., concur.

---

**23.** *See, e.g., Bennett v. Hall,* 431 P.2d 339 (Okl. 1967).

**24.** *Brown,* 563 F.2d at 983.

**25.** *Chandler v. Denton,* 741 P.2d 855, 868 (Okl. 1987).