2001 OK CIV APP 23

**Angela TSOTADDLE, Plaintiff,**

**v.**

**ABSENTEE SHAWNEE HOUSING AUTHORITY, an agency of the State of Oklahoma, Appellant,**

**and**

**Jim Murdock, Appellee,**

**and**

**Absentee Shawnee Tribe of Oklahoma, an Indian Tribe, Defendant.**

**No. 92410.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 8, 2000.

Certiorari Denied Dec. 12, 2000.

Patrick A. Morse, Gary S. Pitchlynn, David Morse, Pitchlynn, Morse, Ritter & Morse, Norman, OK, for Appellant.

Jim T. Priest, Lora F. Irani, McKinney & Stringer, P.C., Oklahoma City, OK, Paul McKinney, Shawnee, OK, for Appellee.

REIF, J.

¶1 This appeal arises from a sexual harassment suit brought by Angela Tsotaddle against Jim Murdock, her former supervisor, and the Absentee Shawnee Housing Authority, her former employer. The primary focus of this appeal is the cross litigation between Mr. Murdock and the Housing Authority.

¶2 Mr. Murdock filed a cross-petition against the Housing Authority for terminating his employment following Ms. Tsotaddle's complaint against him. Mr. Murdock established that the Housing Authority failed to hold a hearing to receive evidence on the complaint and to determine the appropriate action, as set forth in the Housing Authority's Notice of Complaints of Harassment/Leave With Pay, dated May 6, 1997. He also established that the Housing Authority did not provide him a hearing following termination as set forth in the Housing Authority's letter of termination dated June 16, 1997. Mr. Murdock further established that the Housing Authority did not state a specific cause for his termination as provided in the Housing Authority's Personnel Policy. Instead, the termination letter merely advised Mr. Murdock that his "return to work [following the leave period to investigate the complaint] would be subversive to the proper order, discipline and morale of the Housing Authority." In defense, the Housing Authority contended that it did not have to give Mr. Murdock a hearing or a specific cause to terminate him, because his employment was terminable "at-will."

¶3 The jury rejected the Housing Authority's defense and agreed with Mr. Murdock that he was entitled to a hearing and a specific cause for termination as part of his employment contract and as a matter of due process. The jury awarded Mr. Murdock $75,000 actual damages against the Housing Authority, but did not apportion this award between damages for breach of contract and damages for the deprivation of due process in violation of Mr. Murdock's civil rights. After denying motions for judgment notwithstanding the verdict and new trial, the trial court entered judgment for Mr. Murdock, and also

awarded attorney fees and costs as the prevailing party on the 42 U.S.C. § 1983 civil rights claim.[1] The Housing Authority appeals both the principal judgment and the attorney fee award.

¶4 The Housing Authority states four propositions of error in its petition in error, and briefs the identical issues:

1. The District Court erred in denying [Housing Authority's] motion for judgment notwithstanding the verdict because [Housing Authority's] termination of Murdock's employment did not constitute a breach of any implied contract of employment between [Housing Authority] and Murdock.

2. The District Court erred in denying [Housing Authority's] motion for judgment notwithstanding the verdict because the terms of [Housing Authority's] employment of Murdock did not create a sufficient expectancy of continued employment to give rise to a property interest entitled to constitutional due process protection.

3. The District Court [erred] in denying [Housing Authority's] motion for a new trial, or alternatively a remittitur of all or part of the damages awarded to Murdock, in that the damages award was made in error, was not sustained by the evidence and was contrary to law.

4. The award to Murdock of attorney's fees and costs should be reversed.

¶5 These propositions of error are reviewable under different standards of review. We will discuss the applicable standard of review in the course of addressing and deciding the respective propositions.

## I.

¶6 The Housing Authority first claims that the trial court erred in denying its motion for judgment notwithstanding the verdict because the termination of Mr. Murdock did not constitute a breach of contract. The Housing Authority claims that the evidence simply does not support a conclusion that there was a protected contract of employment, or that there was any breach.

¶7 Upon review of a ruling on a motion for judgment notwithstanding verdict, the test of the sufficiency of the evidence is the same as the test for sufficiency of evidence on a motion for directed verdict. *Sadler v. T.J. Hughes Lumber Co., Inc.*, 1975 OK CIV APP 30, ¶4, 537 P.2d 454, 456; *McInturff v. Oklahoma Natural Gas Transmission Co.*, 1970 OK 169, ¶9, 475 P.2d 160, 162. The reviewing court should disregard all conflicting evidence favorable to the movant for judgment notwithstanding the verdict, and the motion should not be sustained unless there is an entire absence of proof showing plaintiff's right to recover. *Sadler,* 1975 OK CIV APP 30, ¶4, 537 P.2d at 456 (citing *Austin v. Wilkerson, Inc.*, 1974 OK 23, 519 P.2d 899). In analyzing the evidence we shall, according to the review standard, disregard all conflicting evidence favorable to the Housing Authority, and determine if there is a total lack of evidence.

¶8 The Housing Authority first emphasizes Oklahoma's staunch recognition of the at-will employment doctrine. Under this doctrine, employers can terminate at-will employees without recourse, in good or bad faith, with or without cause. *Hinson v. Cameron*, 1987 OK 49, ¶13, 742 P.2d 549, 552. There is no implied covenant of good faith and fair dealing that protects an at-will employment relationship from termination. *Gilmore v. Enogex, Inc.*, 1994 OK 76, ¶6, 878 P.2d 360, 362–63 (footnote omitted). The Housing Authority cites the rule that an employee is an at-will employee when his employment contract is of an indefinite duration. Because Mr. Murdock's employment was of an indefinite duration, the Housing Authority contends that this rule dictates that he was an at-will employee. *Hayes v. Eateries, Inc.*, 1995 OK 108, ¶7, 905 P.2d 778, 781 (citation omitted).

¶9 The Housing Authority does acknowledge an exception to the at-will rule in an instance where a contractual entitlement

---

1. A prevailing party on a § 1983 civil rights claim can recover attorney fees and costs pursu- ant to 42 U.S.C. § 1988.

to employment is found, and also acknowledges that "the language of an employer's personnel manual may alter the employment-at-will relationship." *Id.* at ¶ 10, 905 P.2d at 782. Oklahoma law recognizes that an employee manual or personnel policy may form the basis of an implied contract between an employer and its employees if four traditional contract requirements exist: (1) competent parties; (2) consent; (3) a legal object; and (4) consideration. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶ 23, 952 P.2d 492, 501, 502. A principal limitation upon recognition of implied contracts via an employee handbook or personnel policy is that the promises in the employee manual must be in definite terms, not in the form of vague assurances. *Id.*

¶ 10 In arguing that its policy manual does not create a contract, the Housing Authority emphasizes the conclusion of the Oklahoma Supreme Court in both *Hayes* and *Hinson* that a manual's recitation of non-exclusive grounds for termination does not change the at-will relationship. However, the Housing Authority's Personnel Policy seems to go well beyond the employee manuals in *Hayes* and *Hinson*. In those cases, the appellate court noted that the employee manuals listed only *some* grounds for an employee's termination and gave little additional information regarding the scope of the manuals.

¶ 11 Section VIII(G) of the "Personnel Policy" (the Policy) of the Housing Authority does set forth eight nonexclusive reasons for which an employee may be terminated. However, the Policy also contains very specific rules and regulations of employment. It deals with nearly every aspect of employment, including selection procedures, conditions of employment, personnel actions, compensation, overtime/compensatory time, leave/sick leave, fringe benefits, personnel records, performance evaluations, employee rights, grievances, bonuses, and job safety.

¶ 12 The Policy also contains a merit provision relied upon by Mr. Murdock. This merit provision states:

II. *BASIC PRINCIPLES*

A. *Merit System.* The employment of personnel and all actions affecting employees shall be based solely on merit, ability, cooperation, attitude and justice.

The Policy also contains a statement of "Employee Rights" which provides that employees may choose representatives, present grievances, and be treated in a fair and equitable manner by the executive director and board of commissioners. Murdock points to the "Merit System" and "Employee Rights" clauses as contractual provisions upon which he relied, as provisions upon which an implied contract can be construed, and as necessitating due process in acts relating to an employee's employment.

¶ 13 Review of the record leads us to conclude that reasonable minds could reach different conclusions on the issue of whether the Policy created contract rights. Significantly, evidence tending to support the conclusion that the Policy did create such rights came from the Housing Authority's Executive Director. The testimony of the Executive Director established (1) that, when an employee is hired by the Housing Authority, he receives a copy of the Policy; (2) the employee is required to sign a document that states that he has read the Policy, understands it, and agrees to abide by it; (3) the Policy does not state that employees are at-will; and, (4) the Policy does not contain any disclaimer of the intent to contract. Further, the Director candidly admitted that an employee might reasonably conclude that termination from the Housing Authority was dependent upon the reasons listed in the Policy or upon the merit considerations set forth in the document.

¶ 14 Accordingly, we hold that this was sufficient evidence to support the submission of the contract issue to the jury and there was sufficient evidence to support a finding by the jury that contractual rights were created for Mr. Murdock's employment under the Policy. Therefore, we conclude that the trial court did not err in denying the motion for judgment notwithstanding the verdict on this issue.

II.

¶ 15 In its second contention of error the Housing Authority claims that the trial

court also erred in denying its motion for judgment notwithstanding the verdict on Mr. Murdock's civil rights claim. It specifically argues that Mr. Murdock could not successfully pursue a claim under 42 U.S.C. § 1983, because he did not demonstrate a sufficient expectancy of employment so as to prove a property interest entitled to constitutional due process protection. Where a case involves a violation of constitutional rights, an appellate court shall exercise its own independent judgment on questions of both law and interpretation of facts. *Ranola Oil Co. v. Corp. Comm'n*, 1988 OK 28, ¶ 7, 752 P.2d 1116, 1118 (footnote omitted).

▮ ¶ 16 In *Calhoun v. Gaines*, 982 F.2d 1470 (10th Cir.1992), the federal court examined a public employee's § 1983 claim for loss of employment. The court stated:

A public employee faced with termination is entitled to procedural due process if he or she can demonstrate that such termination implicates a property interest protected by the Due Process Clause of the Constitution.... In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court explained that a public employee may acquire a constitutionally protected property right in continued employment. Such a property right derives from that employee's legitimate claim of entitlement to continued employment.... This court has previously noted that such independent sources may include: a state or federal statute; a municipal charter or ordinance; an express *or implied contract;* a written contract with tenure provisions; *or a contract "implied" from policies and practices of a particular institution* .... Our initial query here is whether the terms of appellant's employment, as created by contract, statute or policy manual, create a sufficient expectancy of continued employment to give rise to a property interest entitled to constitutional protection.

*Id.* at 1473–74 (emphasis added). Thus, while the Housing Authority points out that no statute, charter, ordinance, or written contract with tenure provisions supports Mr. Murdock's claim, *Calhoun* makes it clear that Mr. Murdock can establish a sufficient expectancy by implied contract.

▮ ¶ 17 There is case authority supporting the validity of a claim based upon employee manual language similar to that included in the Housing Authority's Policy manual. In *Patrick v. Miller*, 953 F.2d 1240, 1245 (10th Cir.1992), the court found that a manual provision which authorizes removal on merit and fitness alone implies the necessity for a showing of some degree and type of employee fault. *Id.* Mr. Murdock makes a detailed comparison of the manual provision in *Patrick* with the Housing Authority's Personnel Policy provision basing "employment ... and all actions affecting employees ... solely on merit, ability, cooperation, attitude and justice." Indeed, there are strong similarities. While the Housing Authority relies on *Carnes v. Parker*, 922 F.2d 1506 (10th Cir.1991), and *Blanton v. Housing Authority*, 1990 OK 38, 794 P.2d 412, to argue that no property right exists, Mr. Murdock also stresses that the cases do not contain an affirmative restriction like in the Housing Authority's Policy.

¶ 18 The Housing Authority challenges Mr. Murdock's reliance upon *Patrick*, noting that *Patrick* was decided before decisions were handed down in *Gilmore v. Enogex, Inc.*, 1994 OK 76, 878 P.2d 360, *Hayes v. Eateries, Inc.*, 1995 OK 108, 905 P.2d 778, and *Russell v. Bd. of County Comm'rs*, 1997 OK 80, 952 P.2d 492, which all held that promises of continued employment in a personnel manual must be definite and not general platitudes or vague assurances. However, we do not believe that the language in the Policy can be characterized as vague assurances or general platitudes as a matter of law. For example, the "Merit System" and "Employee Rights" provisions in the Policy, could be viewed as specifically limiting the ability of the Housing Authority to terminate its employee—requiring that any action affecting an employee be based on some fault or failure of the employee and requiring that the termination be done with due process safeguards for the employee. There is also the additional evidence of the mention of Mr. Murdock's right to a hearing in both the May 6 and June 16 letters from the Housing Authority's Di-

rector. We find that the jury could have concluded that the statements in these letters were an affirmation of due process rights granted under the provisions of the Policy.

¶ 19 We conclude that the issue of whether the contract created an expectancy of employment was properly submitted to the jury, and that the evidence supports the additional implied jury finding that such an expectancy was created. The trial court did not err in denying the motion for judgment notwithstanding the verdict on this claim.

## III.

¶ 20 The Housing Authority next maintains that the trial court erred in denying its motion for new trial or alternative motion for remittitur. It claims that the damages award was not sustained by the evidence and was contrary to law.

¶ 21 In *Joffe v. Vaughn*, 1993 OK CIV APP 169, ¶ 23, 873 P.2d 299, 305–06 (footnote omitted), the court reviewed the trial court's denial of a motion for new trial that, inter alia, sought a new trial or remittitur on grounds that the damages were excessive and not supported by the evidence. The court of civil appeals stated that "[a] motion for new trial is addressed to the sound discretion of the lower court to be applied in accordance with recognized principles of law; absent error as to a pure question of law, or arbitrary or capricious action, this Court must indulge in the presumption in favor of the trial court's ruling." Additionally, in *Tulsa City Lines v. Geiger*, 1954 OK 263, ¶ 19, 275 P.2d 325, 328 (citation omitted), the supreme court stated, "A new trial should not be granted on the sole ground of excessive damages unless the amount awarded be so flagrantly outrageous and extravagant as to clearly show the jury was actuated by passion, partiality, or prejudice." *Id.*

2. The Housing Authority also challenges Instruction No. 44 on the ground that Mr. Murdock did not have a definite term upon which a loss of future earnings could be computed. This argument is based upon characterization of the instruction as being the same as Oklahoma Uniform Jury Instructions—Civil, Instruction No.

¶ 22 The Housing Authority argues that the award of $75,000 by the jury is not sustainable under the evidence. It claims this amount exceeded any damages shown by Mr. Murdock, who earned a $27,500 annual salary and whose damages on his breach of contract claim would have been, at maximum, $33,000 at the time of trial for the 14–month period after his last salary payment from the Housing Authority. However, this argument overlooks that the jury specifically found for Mr. Murdock on both his claims. Because the jury found for Mr. Murdock on two claims but made only one damage award, the Housing Authority must show that the evidence regarding both claims would not support the combined award.

¶ 23 In addition, under Instruction No. 44,[2] the jury could award Mr. Murdock damages on his contract claim for:

1. The difference between the amount that Defendant Murdock was entitled to under the employment contract ... and what ... Murdock has earned since the discharge or could have earned with reasonable diligence in finding employment of comparable quality....

2. The loss of earnings that Defendant Murdock would be reasonably likely to suffer as a direct result of the discharge, if he used reasonable diligence in finding employment of comparable quality....

The jury was not limited to awarding Mr. Murdock *the salary* he lost from his termination to date of trial; it could also award Mr. Murdock damages for earnings lost as a direct consequence of discharge. The jury could find that Mr. Murdock also suffered economic detriment from not being able to obtain other employment due to the circumstances of his termination by the Housing Authority.

¶ 24 Furthermore, the jury could award damages for detriment other than lost earnings. Under Instruction No. 47 the jury was told that, in addition to damages for lost

21.12. The uniform instruction does contain language regarding "remaining term of the contract" which would have been inappropriate where Mr. Murdock had no specific term of employment. However, the court modified the instruction to omit such reference, and tailored it to the specific facts of this case.

earnings, it could award damages on the civil rights claim, if supported by the evidence, for (a) emotional distress, pain, suffering and humiliation; and (b) any loss of reputation. Mr. Murdock gave testimony which would tend to support an award under each item of damages. It is well settled that:

> [T]he jury has broad discretion to determine the amount of damages for intangible injuries which determination will not be set aside as excessive unless it is "so excessive as to 'strike mankind, at first blush as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice, or corruption.'"

*Joffe*, 1993 OK CIV APP 169, ¶ 24, 873 P.2d at 306 (quoting *Brown v. Skaggs–Albertson's Properties, Inc.*, 563 F.2d 983, 988 (10th Cir. 1977), quoting *Park v. Security Bank and Trust Co.*, 1973 OK 72, ¶ 9, 512 P.2d 113, 116).

¶ 25 In the final analysis, it is impossible to ascribe any part of the $75,000 award to any specific claim or specific item of damages. Therefore, this court's examination must be to determine whether the amount bears some reasonable relation to the evidence. *Currens v. Hampton*, 1997 OK 58, ¶ 10, 939 P.2d 1138, 1141. The record does contain evidence tending to support the award. Accordingly, the verdict must be upheld, because an appellate court has "no right to place limitations upon the amount of damages returned by a jury, unless we are convinced that the amount of recovery bears no relation whatever to the evidence, or that it was induced by bias or prejudice on the part of the jury." *Tulsa City Lines*, 1954 OK 263, ¶ 19, 275 P.2d at 328 (citation omitted). The court did not err in overruling the motion for new trial upon the basis of an unsupported verdict.

## IV.

¶ 26 The Housing Authority's last claim of error is that the trial court erred in its award of prevailing party attorney fees to Mr. Murdock. The Housing Authority points out that the only claim for which prevailing party attorney fees are authorized is the § 1983 claim. Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs." The Housing Authority claims that the trial court basically awarded all the fees requested by Mr. Murdock, even though much, if not most, of the attorneys' efforts were spent defending Ms. Tsotaddle's claim, pursuing the counterclaims against Ms. Tsotaddle, and/or pursuing the breach of contract claim against the Housing Authority. None of these legal actions have a contractual or statutory basis for the award of attorney fees.

¶ 27 The Housing Authority also argues that to allow recovery of attorney fees and costs by Mr. Murdock would allow a double recovery. The Housing Authority points to the fact that three virtually identical sexual harassment suits were filed on the same day by former employees of the Housing Authority claiming that Mr. Murdock had sexually harassed them. The Housing Authority claims that Mr. Murdock filed counterclaims in these other lawsuits identical to the ones presented in this case. The Housing Authority stresses that Mr. Murdock obtained a default judgment against the plaintiff in one of these lawsuits, both on the claims against him and for his counterclaims. At a subsequent hearing in the defaulted case to determine damages, Mr. Murdock purportedly testified that he had incurred damages of $44,296 in lost pay and $50,000 in attorney fees. His counsel purportedly asserted the same thing in opening and closing arguments. The Housing Authority states Mr. Murdock was subsequently awarded damages of $250,000, and argues that this damage award included $50,000 in attorney fees. Thus, the Housing Authority claims Mr. Murdock's attorney fees award in this case is a double recovery which should be overturned on appeal.

¶ 28 Mr. Murdock responds by noting that *every* claim involved in the lawsuit revolved around the one issue of whether or not Mr. Murdock sexually harassed Ms. Tsotaddle. He claims that, to prevail on his implied contract and civil rights claim, it was essential to show that the claims by Ms. Tsotaddle were without merit. He asserts that, if the

charges against him had been proven true, it would have supported the Housing Authority's argument that Mr. Murdock had been properly terminated. Thus, Mr. Murdock claims that the issues in the case were so "inextricably intertwined" that the fees can only be awarded for *all* of the work of his attorneys.

¶ 29 This court must reject the "double recovery" argument, because the Housing Authority relies upon evidence outside the record *of this case.* There are purported quotations from transcripts in other cases not of record in this case. Such items do not constitute competent evidence for this court to review. An appellate court "may not consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court." *Hart v. McVay,* 1992 OK 47, ¶ 14, 832 P.2d 822, 825; *Chamberlin v. Chamberlin,* 1986 OK 30, 720 P.2d 721. This contention simply deals with matters not capable of review by this court. *Meyer v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n,* 1995 OK CIV APP 11, 890 P.2d 1361.

¶ 30 We find, however, that the Housing Authority's contention regarding apportionment of the attorney fees has more merit. Even if Mr. Murdock's successful defense of Ms. Tsotaddle's claims was crucial to his success on the cross-claims he asserted against the Housing Authority, the claims themselves are separate and distinct and involve totally different issues and evidence. The only basis for recovery of attorney fees by Mr. Murdock for defeating *other* claims would involve his successful defense of counterclaims by the Housing Authority that were asserted as a setoff to his claim. *See Green Bay Packaging v. Preferred Packaging,* 1996 OK 121, ¶¶ 32–49, 932 P.2d 1091, 1097–1100. However, the Housing Authority did not assert any counterclaims against Mr. Murdock for purposes of setoff.

¶ 31 Oklahoma strongly adheres to the American Rule that prevailing party attorney fees are not recoverable in the absence of a statute or enforceable contract.

*Morgan v. Galilean Health Enter., Inc.,* 1998 OK 130, ¶ 11, 977 P.2d 357, 362. In a case involving multiple claims where prevailing party attorney fees are authorized for only one claim, the law dictates that the court "apportion" the fees so that attorney fees are awarded only for the claim for which there is authority to make the award. *Id.* at n. 7; *Sisney v. Smalley,* 1984 OK 70, 690 P.2d 1048.

¶ 32 In making an apportionment, as part of setting a reasonable fee, *"permissible recovery must be set upon and supported by evidence presented in an adversary proceeding,* in which facts and computation upon which the trial court rests its determination are set forth in the record with a high degree of specificity." *Morgan,* 1998 OK 130 at ¶ 15, 977 P.2d at 364 (footnotes omitted). "Without the requisite probative support, [an appellate court] cannot test the reasonableness of [an] award." *Id.* at ¶ 17, 977 P.2d at 365. Accordingly, we must reverse the award of attorney fees and remand for the trial court to determine reasonable attorney fees attributable to the successful prosecution of Mr. Murdock's § 1983 civil rights claim.

## Conclusion

¶ 33 We affirm the judgment on the jury verdict in favor of Mr. Murdock on his two cross-claims. We do so because the issues of whether Mr. Murdock's employment was at-will or had implied contract protection could not be determined as matters of law; those issues were properly presented to the jury as trier of fact.

¶ 34 In review of the judgment on jury verdict this court is not allowed to weigh the evidence, nor to invade the jury's peculiar province and substitute its judgment for that of the jury. *McCoy v. Okla. Farm Bur. Mut. Ins. Co.,* 1992 OK 43, ¶ 10, 841 P.2d 568, 570 (footnote omitted). The jury was presented with some evidence that tended to support Mr. Murdock's claims, and it appears that the jury weighed the evidence carefully and resolved the dispute in favor of Mr. Murdock. Where there is any competent evidence reasonably tending to support

the verdict of a jury, an appellate court will not disturb the verdict and judgment based thereon. *Eversole v. Oklahoma Hosp. Founders,* 1991 OK 80, ¶ 9, 818 P.2d 456, 459; *Walker v. St. Louis–San Francisco Ry. Co.,* 1982 OK 25, ¶ 10, 646 P.2d 593, 597.

¶ 35 However, the attorney fee issue presents a question of law. Under the American Rule, a party is only entitled to the award of attorney fees if authorized by statute or contract. The only claim here for which a fee is authorized is Mr. Murdock's § 1983 claim. Because it is a distinct claim, legally and factually from the other claims resolved in the lawsuit, the trial court must specifically determine the attorney fees attributable only to the § 1983 claim. Therefore, we reverse the award of attorney fees and remand for the trial court to determine the portion of Mr. Murdock's attorney fees that are attributable to the § 1983 claim, to determine the reasonable value of such services, and to enter an award.

¶ 36 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

¶ 37 GOODMAN, C.J., and STUBBLEFIELD, J., concur.